**No. 25-1516**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

---

**ICONIC MARS CORPORATION**

***Plaintiff-Appellant*,**

**STEPHEN M. LOBBIN**

***Sanctioned Party-Appellant*,**

**v.**

**KAOTICA CORP.,**

***Defendant-Appellee.***

---

Appeal from the United States District Court Southern District of California, No. 3:22-cv-00092-CAB-DEB
The Honorable Cathy Ann Bencivengo

---

**APPELLEE KAOTICA CORP.'S RESPONSE BRIEF**

---

Kristin M. Adams
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, N.E.
Suite 2800
Atlanta, GA 30309
(404) 815-6138
kmadams@ktslaw.com

Kathleen R. Geyer
Dario A. Machleidt
KILPATRICK TOWNSEND & STOCKTON LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600
dmachleidt@ktslaw.com
kgeyer@ktslaw.com

*Counsel for Kaotica Corp.*

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2025-1516

**Short Case Caption** Iconic Mars Corporation v. Kaotica Corp.

**Filing Party/Entity** Kaotica Corp.

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 03/30/2026

Signature: /s/ Kathleen R. Geyer

Name: Kathleen R. Geyer

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☐ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Kaotica Corporation | Kaotica IP Corp. | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| X. Diego Wu Min (Kilpatrick) | | |
| Matthew J. Meyer (Kilpatrick) | | |
| James J. Maune | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## TABLE OF CONTENTS


CERTIFICATE OF INTEREST ........ i

TABLE OF CONTENTS ........ iv

TABLE OF AUTHORITIES ........ vii

TABLE OF ABBREVIATIONS AND ACRONYMS ........ iv

STATEMENT OF RELATED CASES ........ vi

INTRODUCTION ........ 1

STATEMENT OF THE ISSUES ........ 6

KAOTICA'S STATEMENT OF THE CASE ........ 8

I. Parties and Related Litigation Background ........ 8

II. Contempt Hearing ........ 10

III. Sanctions Letter ........ 12

IV. Revisionist History ........ 14

COUNTER STANDARD OF REVIEW ........ 19

SUMMARY OF THE ARGUMENT ........ 21

ARGUMENT ........ 25

I. The District Court properly excluded Iconic's patent-based evidence under Federal Rule of Evidence 403. ........ 25

A. The abuse-of-discretion standard applies to the District Court's Rule 403 determination to exclude the Utility Patent from trial. ........ 25

B. The District Court properly exercised its discretion to exclude the Utility Patent because Iconic

repeatedly made clear its intention to misuse the patent to mislead and confuse the jury regarding the scope of the Kaotica Trade Dress. ........ 27

C. Iconic's cases do not warrant reversing the District Court's Rule 403 ruling. ........ 35

D. Iconic's reliance on the District Court's commentary at summary judgment is not applicable to the Rule 403 analysis at trial. ........ 36

E. Even if not properly excluded under Rule 403, the District Court's exclusion of the Utility Patent was harmless because the Stipulated Judgment prohibits Iconic from challenging the validity of Kaotica's Trade Dress. ........ 38

II. The District Court did not abuse its discretion in sanctioning Lobbin. ........ 39

III. The District Court properly added Iconic's CEO, Olaleye, to the Final Judgment. ........ 46

A. The District Court did not err when finding that Olaleye controlled the litigation. ........ 49

B. The District Court did not err in finding a unity of interests. ........ 50

C. The District Court acted well within its discretion to add Olaleye to the Final Judgment. ........ 51

IV. The District Court did not err in finding Appellants' recusal request facially insufficient and untimely. ........ 53

A. Appellants' recusal allegations are facially deficient. ........ 54

B. Appellants' recusal motion was untimely. ........ 59

C. Because Appellants failed to state any bases for recusal and failed to timely file, Judge Bencivengo did not abuse her discretion is refusing to refer the recusal motion. .......... 61

V. The District Court did not deny due process to Appellants. .......... 62

VI. The District Court did not err in providing the jury with the "intent" instruction to which Iconic repeatedly agreed.......... 63

VII. The District Court did not err in granting judgment as a matter of law on Iconic's claim for breach of contract. .......... 67

CONCLUSION .......... 69

CERTIFICATE OF COMPLIANCE .......... 71

## TABLE OF AUTHORITIES

**Cases**

*adidas Am., Inc. v. Skechers USA, Inc.*,
149 F. Supp. 3d 1222 (D. Or. 2016), *aff'd in relevant part, rev'd in part*, 890 F.3d 747 at 758 (9th Cir. 2018) .......................... 66

*Bassett Unified Sch. Dist. v. Superior Ct.*,
89 Cal. App. 5th 273 (2023) .......................... 58

*Beer Nuts, Inc. v. Clover Club Foods Co.*,
805 F.2d 920 (10th Cir. 1986) .......................... 66

*BEW Loc. Union No. 100 Pension Tr. Fund v. Dale Elec., Inc.*,
165 F.3d 916 (9th Cir. 1998) .......................... 20

*Blumenthal Distrib., Inc. v. Herman Miller, Inc.*,
963 F.3d 859 (9th Cir. 2020) .......................... 27

*Bodum USA, Inc. v. A Top New Casting Inc.*,
927 F.3d 486 (7th Cir. 2019) .......................... passim

*Boyde v. California*,
494 U.S. 370 (1990) .......................... 20

*Bullard v. Chrysler Corp.*,
925 F. Supp. 1180 (E.D. Tex. 1996) .......................... 41

*Cal. Pac. Bank v. FDIC*,
885 F.3d 560 (9th Cir. 2018) .......................... 61

*Carolina Cas. Ins. Co. v. L.M. Ross L. Grp.*,
212 Cal. App. 4th 1181 (2012) .......................... 48

*Carr v. Barnabey's Hotel Corp.*,
23 Cal. App. 4th 14 (1994) .......................... 49

*Charron v. United States*,
200 F.3d 785 (Fed. Cir. 1999) .......................... 56

*City of Long Beach v. Standard Oil Co. of Cal.*,
46 F.3d 929 (9th Cir. 1995) .......... 25

*Crawford v. Lungren*,
96 F.3d 380 (9th Cir. 1996) .......... 63

*Danko v. O'Reilly*,
232 Cal. App. 4th 732 (2014) .......... 52

*Duckett v. Godinez*,
67 F.3d 734 (9th Cir. 1995) .......... 63

*E. & J. Gallo Winery v. Gallo Cattle Co.*,
967 F.2d 1280 (9th Cir. 1992) .......... 60

*Edlund v. Massanari*,
253 F.3d 1152 (9th Cir. 2001) .......... 63

*Focus Products Group International, LLC v. Kartri Sales Co.*,
156 F.4th 1259 (Fed. Cir. 2025) .......... 35

*Foster v. Mydas Assocs., Inc.*,
943 F.2d 139 (1st Cir. 1991) .......... 42

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
826 F.2d 837 (9th Cir. 1987) .......... 34

*Greenspan v. LADT, LLC*,
191 Cal. App. 4th 486 (2010) .......... 52

*Hall v. Cole*,
412 U.S. 1 (1973) .......... 43

*In re Levander*,
180 F.3d 1114 (9th Cir. 1999) .......... 47, 48, 49, 51

*Innovation Ventures, LLC v. N2G Distrib., Inc.*,
No. SACV 12-717 ABC (Ex), 2014 WL 10384631 (C.D. Cal. Feb. 18, 2014) .......... 48, 51

*Jones v. Luebbers*,
359 F.3d 1005 (8th Cir. 2004) ........................................................ 58

*Katzir's Floor & Home Design, Inc. v. M-MLS.com*,
394 F.3d 1143 (9th Cir. 2004) ................................................ 20, 52

*Larsen v. Comm'r Soc. Sec. Admin.*,
328 F. App'x 578 (9th Cir. 2009) .................................................. 62

*Lee-Davis v. Gap, Inc.*,
No. 5:20-CV-2257, 2022 WL 624517 (N.D. Ohio Mar. 3, 2022) .................................................................................... 68

*Leslie v. Grupo ICA*,
198 F.3d 1152 (9th Cir. 1999) ........................................................ 55

*Leviton Mfg. Co. v. Universal Sec. Instruments, Inc.*,
304 F. Supp. 2d 726 (D. Md. 2004) ........................................... 33, 35

*Liteky v. United States*,
510 U.S. 540 (1994) ...................................................................... 55

*Logtale, Ltd. v. IKOR, Inc.*,
738 F. App'x 422 (9th Cir. 2018) .................................................. 65

*Medtronic, Inc. v. Teleflex Life Scis. Ltd.*,
86 F.4th 902 (Fed. Cir. 2023) ................................................ 46, 61

*Microsoft Corp. v. DataTern, Inc.*,
755 F.3d 899 (Fed. Cir. 2014) ........................................................ 46

*Monsanto Co. v. Scruggs*,
459 F.3d 1328 (Fed. Cir. 2006) ...................................................... 46

*Moonbug Ent. Ltd. v. BabyBus (Fujian) Network Tech. Co.*,
No. 21-cv- 06536-EMC, 2025 WL 445801 (N.D. Cal. Feb. 10, 2025) ....................................................................................... 48

*Murray v. S. Route Mar. SA*,
870 F.3d 915 (9th Cir. 2017) .......................................................... 25

*Pumphrey v. K.W. Thompson Tool Co.*,
62 F.3d 1128 (9th Cir. 1995) .......... 43

*Ramirez v. Towe*,
No. CV 15-02179-MWF (FEMx), 2017 WL 11648982 (C.D. Cal. July 10, 2017) .......... 67

*Ray v. Google LLC*,
No. 23-3987, 2025 WL 2058822 (9th Cir. July 23, 2025), *cert. denied*, No. 25-6976, 2026 WL 1203422 (U.S. May 4, 2026) .......... 68

*Relentless Air Racing, LLC v. Airborne Turbine Ltd. P'ship*,
222 Cal. App. 4th 811 (2013) .......... 48

*Roditi v. New River Invs., Inc.*,
Nos. 24-4928, 24-6647, 2025 WL 3539136 (9th Cir. Dec. 10, 2025) .......... 25, 26

*Sazerac Co., Inc. v. Fetzer Vineyards, Inc.*,
251 F. Supp. 3d 1288 (N.D. Cal. 2017), *aff'd*, 786 F. App'x 662 (9th Cir. 2019) .......... 27

*Scott v. Sec. Title Ins. & Guarantee Co.*,
9 Cal. 2d 606 (1937) .......... 68

*Star Mountain Plan Tr. v. Titan Mining (US) Corp.*,
No. CV-22-01389-PHX-GMS, 2023 WL 2355916 (D. Ariz. Feb. 3, 2023) .......... 52

*Swisher Hygiene Franchise Corp. v. Barton*,
No. 20-16727, 2022 WL 1055563 (9th Cir. Apr. 8, 2022) .......... 43

*Tejero v. Portfolio Recovery Assocs., L.L.C.*,
955 F.3d 453 (5th Cir. 2020) .......... 59

*Tennison v. Circus Circus Enters., Inc.*,
244 F.3d 684 (9th Cir. 2001) .......... 25

*Terrell v. Att'y Gen.*,
No. C-98-00219-VRW, 1998 WL 574387 (N.D. Cal. Aug. 31, 1998), *aff'd sub nom. Terrell v. Lungren*, 188 F.3d 515 (9th Cir. 1999) ........ 62

*Toth v. Trans World Airlines, Inc.*,
862 F.2d 1381 (9th Cir. 1988) ........ 55

*TrafFix Devices, Inc. v. Marketing Displays, Inc.*,
532 U.S. 23 (2001) ........ 33, 35

*Trevino v. Gates*,
99 F.3d 911 (9th Cir. 1996) ........ 25

*Triplett v. Farmers Ins. Exchange*,
24 Cal. App. 4th 1415 (1994) ........ 47

*United States v. Azhocar*,
581 F.2d 735 (9th Cir. 1978) ........ 62

*United States v. Bell*,
79 F. Supp. 2d 1169 (E.D. Cal. 1999) ........ 60

*United States v. DeLuca*,
692 F.2d 1277 (9th Cir. 1982) ........ 63

*United States v. Grinnell Corp.*,
384 U.S. 563 (1966) ........ 58

*United States v. Hinkson*,
585 F.3d 1247 (9th Cir. 2009) ........ 25

*United States v. Holland*,
519 F.3d 909 (9th Cir. 2008) ........ 58

*United States v. Leal-Cruz*,
431 F.3d 667 (9th Cir. 2005) ........ 65, 66

*United States v. Martinez*,
5 F.3d 542 (9th Cir. 1993) ........ 20

*United States v. Perez*,
116 F.3d 840 (9th Cir. 1997) .................................................. 19, 67

*United States v. Pimentel-Lopez*,
859 F.3d 1134 (9th Cir. 2016) ....................................................... 64

*United States v. Sanchez*,
914 F.2d 1355 (9th Cir. 1990), *cert. denied*, 111 S.Ct. 1626
(1991) .............................................................................................. 20

*United States v. Schafer*,
625 F.3d 629 (9th Cir. 2010) ......................................................... 26

*United States v. Scholl*,
166 F.3d 964 (9th Cir. 1999) ......................................................... 55

*United States v. Sims*,
845 F.2d 1564 (11th Cir. 1988) ..................................................... 59

*United States v. Studley*,
783 F.2d 934 (9th Cir. 1986) .................................................. 53, 60

*VenVest Ballard, Inc. v. Clockwork, Inc.*,
No. ED CV 14-00195-MWF (Ex), 2015 WL 12745801 (C.D.
Cal. Feb. 11, 2015)........................................................................ 65

*Wells Fargo Bank, N.A. v. Weinberg*,
227 Cal. App. 4th 1 (2014)............................................................ 52

*Whoop, Inc. v. Shenzhen Lexqi Elec. Tech. Co.*,
818 F. Supp. 3d 207 (D. Mass. 2026) ............................................ 33

*Wood v. McEwen*,
644 F.2d 797 (9th Cir. 1981) ......................................................... 61

**Statutes**

28 U.S.C. § 144 ........................................................... 53, 59, 61, 62

28 U.S.C. § 455 ................................................................. 53, 59, 60

**Rules**

Cal. Civ. Proc. Code § 187 .......... 23, 47, 52

CivLR 16.1(f)(6)(c)(7) .......... 65

Fed. Cir. R. 28(b) .......... 19

Fed. R. App. P. 28 .......... 23

Fed. R. App. P. 28(a)(6) .......... 46, 61

Fed. R. Civ. P. 11 .......... 43

Fed. R. Civ. P. 37 .......... 43

Fed. R. Civ. P. 51(c)(2) .......... 67

Fed. R. Civ. P. 69(a) .......... 23, 47

Fed. R. Evid. 403 .......... passim

**Other Authorities**

9th Cir. Model Civ. Jury Instr., Intro. (2025) .......... 64

## TABLE OF ABBREVIATIONS AND ACRONYMS

| | |
|---|---|
| Stipulated Judgment | The Amended Stipulated Judgment and Permanent Injunction entered on October 27, 2021 at *Kaotica IP Corp. v. Iconic Mars Corp. et al.*, No. 3:21-cv-00433 (S.D. Ca.), Dkt. 1-2 (Appx90–107) |
| Exhibit 2 | Exhibit 2 to the Stipulated Judgment |
| Comet 1.0; Version 1.0 Comet; Old Comet | The original Comet subject to the Stipulated Judgment (Appx106) |
| Comet 2.0; Version 2.0 Comet; New Comet | The redesigned Comet found to willfully violate Kaotica's Trade Dress in the underlying litigation |
| Kaotica | Appellee Kaotica Corporation |
| Iconic | Appellant Iconic Mars Corporation |
| Lobbin | Sanctioned-Party Appellant Stephen Lobbin |
| Olaleye | Oluseyi James Olaleye, Judgment Debtor |
| Appellants | Collectively, Iconic, Lobbin, and Olaleye |
| Judge Bencivengo | Honorable Cathy Ann Bencivengo |
| District Court | United States District Court for the Southern District of California |

| | |
|---|---|
| Kaotica Trade Dress | The external product configuration for a microphone noise mitigation device consisting of a spherical black body, onto one side of which is placed a flat, circular pop filter of a contrasting color, creating the look of an eyeball. |
| Contempt Hearing | March 24, 2022 Hearing in *Kaotica IP Corp. v. Iconic Mars Corp. & Oluseyi James Olaleye*< No. 21-cv-0433-CAB (S.D. Cal.) |
| Utility Patent or ’662 Patent | U.S. Patent No. 8,737,662 |
| Threat Letter | Appx2344-45 |
| Final Judgment | Judgments entered on February 5, 2025 (Appx19) & May 29, 2025 (Appx24) |
| Br. | Appellants’ Opening Brief |
| JMOL | Judgment as a matter of law |

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, no other appeal in or from this civil action was previously before this or any other appellate court. The Stipulated Judgment that underlies the claims in this appeal was entered in *Kaotica IP Corp. v. Iconic Mars Corp.*, No. 2:21-cv-00433-CAB-DEB (S.D. Cal.), from which Appellant Iconic Mars has noticed an appeal to this Court. *See Kaotica IP Corp. v. Iconic Mars Corp.*, No. 25-1883, D.E. 1–2 (Fed. Cir. June 25, 2025) (the "Stipulated Judgment Appeal"). The Federal Circuit is currently in the process of setting the Stipulated Judgment Appeal for oral argument. *Id.*, D.E. 33, 40.

## INTRODUCTION

This appeal is Lobbin's and his clients' latest attempt to avoid the consequences of their pattern of willful misconduct. Throughout this lawsuit, Appellants escalated their tactics as Kaotica illuminated the baselessness of Appellants' case. These tactics culminated in a meritless motion to recuse the Honorable Cathy Ann Bencivengo a year after trial and, conveniently, only four days after Judge Bencivengo added Olaleye to the judgment.

This case is not the parties' first dispute before Judge Bencivengo. In 2021, Kaotica sued Iconic and Olaleye for infringement of the Kaotica Trade Dress covering its "Eyeball" product. The parties resolved that first lawsuit via a Stipulated Judgment Lobbin negotiated and executed on behalf of Iconic and Olaleye. That stipulation required Iconic and Olaleye to agree that: Kaotica owned valid trade dress rights in the *external* design of its Eyeball; Iconic's competing Comet 1.0 product infringed that trade dress; and they would stop their infringement by the end of 2021.

But in early January 2022, Iconic launched an externally indistinguishable product, the Comet 2.0, which infringed the Kaotica

Trade Dress in exactly the same way as the Comet 1.0. When Kaotica raised this fact with Appellants, Iconic (represented again by Lobbin) filed this declaratory relief action on the notion that the Stipulated Judgment did not, in fact, bind Iconic regarding the substantially indistinguishable new product. To support this argument, Appellants repeatedly—and improperly—sought to redefine the Kaotica Trade Dress to include the *internal* components of the product.

At trial, Olaleye made a startling and devastating admission: he accidentally confused the admittedly infringing Comet 1.0 (shown in Exhibit 2 to the Stipulated Judgment) with the Comet 2.0 that Appellants contended differed from its predecessor. The District Court gave Appellants ample opportunity to fix this fatal admission: "THE COURT: Sir, this is the [E]xhibit [2] to the stipulated judgment that was the accused product. I think you might want to reconsider your response. Perhaps if you gave him a hard copy instead of doing it on the screen, it might help him." Appx1594.

Yet Lobbin made no contemporaneous effort to acknowledge or even address this admission. Instead, in his closing argument, Lobbin tried to undo his client's damaging testimony by falsely accusing

*Kaotica's* counsel of misleading the jury and intentionally manipulating the exhibits to the Stipulated Judgment. According to Appellants, when Olaleye testified that Exhibit 2 showed an image of the new Comet 2.0, he was right. The District Court remedied Lobbin's false and prejudicial argument by instructing the jury:

> THE COURT: The stipulated judgment -- you will look at it. It attaches, as a picture, an exhibit, a photograph of the Comet Version 1 that was the accused product that the parties agreed infringed the trade dress.
>
> The argument being made here is that somehow that was the Version 2. The Version 2 didn't exist at the time. It was a judgment that ended the case over the Version 1.
>
> The only testimony at issue regarding that was, on the stand, Mr. Olaleye mistakenly thought that that picture was -- was rather adamant that that was a picture of the Version 2.
>
> It couldn't have been. It wasn't. I tried to help them clean it up. They didn't.
>
> This argument that somehow [Kaotica's] defense counsel is misleading you is inappropriate, and you are to disregard it. It is not evidence anyway, but it is an inappropriate argument.
>
> You may finish, sir. You have less than five minutes.

Appx1162.

Lobbin later justified this plainly improper argument by admitting he failed to read the entirety of the *sixteen-page* Stipulated

Judgment. Appx1499–1502. On appeal, Lobbin doubles down on his client's mistake by contending "[a]t the time" the parties executed the Stipulated Judgment, he did not realize Exhibit 2 showed the wrong version of his clients' product because he "was focused only on the controlling language of the settlement agreement, not the perfunctory and redundant exhibits." Br., 10.

Despite Lobbin's unsubstantiated blame-shifting, the jury found for Kaotica on every claim at trial. Facing a judgment, further attorneys' fees, and sanctions for a litany of impermissible and vexatious behaviors, Appellants resorted to unseemly tactics to try and scare Kaotica into settling. At Lobbin's urging, Olaleye sent the Threat Letter to Kaotica's owners. In it, Olaleye demanded Kaotica "settle this matter now, quietly . . . or we escalate, and I promise you this disrupts your peace in ways you haven't even begun to consider," including "serious consequences" "that extend far beyond the courtroom." Appx2345; Appx 2394.

Kaotica persevered and was awarded its damages and attorneys' fees for Iconic's willful trade dress infringement, totaling over $2,000,000. Afterwards, Olaleye promptly closed Iconic's bank account,

moved its money to his personal account, and continued selling identical products under a new company name, "Audio Icon." Olaleye boasted on social media that he was would not "take millions of dollars and give it to [Kaotica]." Appx2347-48.

The District Court added Olaleye as a judgment debtor due to his transparent attempt to avoid the judgment while benefiting from Iconic's business under a new name. And the District Court exercised what it termed "rough justice" to find Lobbin jointly and severally liable for just over $650,000 of Kaotica's total fee award to "at least partially reimburse[] Kaotica for fees and expenses" Lobbin's bad-faith tactics forced it to incur. Appx44.

Appellants lament that being held accountable for their egregious behavior "caused Iconic and counsel incredible anxiety personally, which was unnecessary and unfair." Br., 32 n.21. But what is unnecessary and unfair is Appellants' repeated abuses of the legal process and their misrepresentations to the court and jury. Appellants' actions are not anomalies, but a small window into their constant disregard for the rule of law. Lobbin, in particular, has been sanctioned repeatedly in prior cases yet plainly remains undeterred. At the end of

the District Court proceedings, his own client, Olaleye, even sought to set aside the judgment based on Lobbin's neglect in representing him. Appx2368 (Olaleye "relied entirely on attorney[] Stephen Lobbin, to handle this case"); Appx2369 (I "placed full trust in [Lobbin] to act in the best interests of Iconic Mars, and that trust ultimately left me unprotected and uninformed at a critical time.").

The jury and District Court managed to sift through Lobbin's and Iconic's bad-faith tactics to reach a just outcome in this case. The District Court's judgment and orders should be affirmed.

## STATEMENT OF THE ISSUES

1. Whether the District Court properly exercised its discretion to exclude the Kaotica Utility Patent under Federal Rule of Evidence 403 because Iconic and Lobbin made clear they would improperly use the Utility Patent to mislead and confuse the jury about the definition and scope of the Kaotica Trade Dress.

2. Whether the District Court properly exercised its discretion to sanction Lobbin under its inherent authority and award a limited portion of Kaotica's attorneys' fees and costs because it found Lobbin

acted in bad faith in bringing this meritless lawsuit and in the way he litigated before, during, and after trial.

3. Whether the District Court properly exercised its discretion to add Olaleye personally to the final judgment under California law to avoid inequitable results when he shuttered Iconic to avoid payment of the judgment to Kaotica where Olaleye had control over the Underlying Litigation, was represented therein, and there is unity of interest and ownership between Iconic and Olaleye.

4. Whether the District Court properly exercised its discretion by denying Appellants' motion for recusal because it was untimely and facially deficient.

5. Whether Iconic waived any due process challenge by failing to raise it to the District Court. And if not waived, whether the District Court's statements that were consistent with Appellants' representations and therefore could not rise to the extremely high level of interference required for a due process violation

6. Whether Iconic waived any challenge to the jury instruction on "intent" for likelihood of confusion under the invited error doctrine because Iconic jointly proposed that instruction and failed to timely

object during the charge conference. And if not waived, whether the District Court properly exercised its discretion to instruct the jury on the "intent" factor by using the jointly submitted jury instructions supported by significant case law.

7. Whether the District Court properly granted judgment as a matter of law against Iconic on its breach-of-contract claim because Kaotica could not breach a contract provision that does not impose any obligations or restrictions on Kaotica.[1]

## KAOTICA'S STATEMENT OF THE CASE

### I. Parties and Related Litigation Background

Kaotica and Iconic competed in the market for microphone isolation products. Appx2071. Since its inception, Kaotica has been a family-run business; its owners are Olivia Zukowski (COO) and her husband, Konrad Zukowski (CEO). For over a decade, Kaotica has designed, manufactured, and sold the Kaotica Eyeball, named for its distinct aesthetic appearance. *See* Appx1867-74.

---

[1] Appellants incorrectly claim that the District Court granted judgment as a matter of law on Iconic's "interference and unfair competition claims" in their Statement of the Issues. The District Court submitted Iconic's interference claim to the jury (Appx1208) and resolved Iconic's unfair competition claim post-trial under Rule 52 (Appx5-7).

In 2021, Kaotica's sister company, Kaotica IP Corp., sued Iconic and Olaleye for patent, copyright, and trade dress infringement. *See Kaotica IP Corp. v. Iconic Mars Corp.*, No. 2:21-cv-00433-CAB-DEB (S.D. Cal.). The parties quickly began settlement talks and, in October 2021, they resolved that lawsuit in Kaotica's favor with a Stipulated Judgment (Appx90-106). In the Stipulated Judgment—signed by Lobbin as Iconic's and Olaleye's counsel—Iconic conceded that Kaotica's Trade Dress was valid, that Iconic's Version 1.0 Comet infringed Kaotica's rights, and that continued sales would irreparably harm Kaotica. Appx1862-63.

The Stipulated Judgment refers to its Exhibit 2 as showing the Accused Products; namely, the Version 1.0 Comet. Appx92; Appx106–07. Appellants "acknowledge[d] and agree[d] that [] the Accused Products *are the only noise mitigating microphone attachments*" Iconic had sold by the date of the stipulation (October 27, 2021), and that "this representation is a material inducement for Kaotica to resolve this matter on the terms set forth herein." Appx92 (emphasis added). In other words, the Comet Version 2.0—the subject of this action—was not

being sold in late 2021 and was not the subject of the Stipulated Judgment.

## II. Contempt Hearing

Shortly after the parties signed the Stipulated Judgment, Kaotica sought to hold Iconic in contempt for violating its terms by continuing to advertise products using images of the Version 1.0 Comet into 2022. *See, e.g.*, Appx2296. The District Court held a hearing on March 24, 2022.

During the hearing, the District Court asked Lobbin whether Iconic violated the Stipulated Judgment by continuing to "advertis[e] actively the originally accused [Version 1.0] product and that even though you ultimately sold the new [Comet 2.0] product, the pictures, the advertisements that brought people to your website continued after the 1st [of January 2022] to be the accused device." Appx2296. Lobbin responded, "No, it's not true. So this is the original version 1 accused product at the beginning of the case. This disappeared before January 1st [2022]. The product disappeared. The advertising for the product disappeared. Gone." Appx2296. Olaleye repeated his counsel's statements when he took the stand during the contempt hearing.

Appx2302-04. The District Court noted that, "right now, I have [Olaleye]'s testimony … that those figures [being used online] are not the version that was the accused device." Appx1623.

Appellants stress that, during the contempt hearing, the District Court found "the changes [Iconic] made [between the Version 1.0 and 2.0 Comets], which have moved farther from [Kaotica's] original design, are not insufficient enough …" Br., 16 (alterations added; ellipses in original). Appellants rely on this quote to argue that during the contempt hearing, "the district court commented on the reasonableness of Iconic's claims." Br., 15. Appellants' ellipses, however, omit the actual finding of the District Court:

> [Kaotica] can charge their new [Comet 2.0] product with infringement. [Kaotica] can file [its] counterclaim that [Iconic is] still infringing [Kaotica's] patents and your trade dress, but I do not believe at this point *for purposes of a contempt citation* that the changes [Iconic has] made, which have moved farther away from [Kaotica's] original design, are not insufficient enough to give rise to *contempt*.

Appx1619–20 (emphasis added).

The District Court found that Kaotica did not meet its clear-and-convincing burden for contempt to disprove Appellants' assertions during the hearing. It did not, however, acknowledge the

"reasonableness of Iconic's claims," which the District Court said the parties could continue to litigate in this action. With the benefit of written discovery, depositions, and trial, Kaotica prevailed on its breach-of-contract counterclaim. That counterclaim was substantively identical to its request for contempt. *See, e.g.*, Appx580 ("[THE COURT:] Kaotica alleges, and the Court has found, that after the cutoff date of the January 1st, 2022, Iconic Mars still used images of the old Comet, the Comet Version 1, to market its products in violation of the Stipulated Judgment."); Appx749.

## III. Sanctions Letter

On July 14, 2022, Kaotica sent its Sanctions Letter to Lobbin. Appx2273-76. First, Kaotica explained how Iconic's breach-of-contract claim was based on false statements regarding harm in 2021:

> [C]ontrary to your breach-of-contract accusations, [Kaotica's counsel's] November letter to Shopify did not cause Iconic any harm in 2021. You admitted this very fact in a January 2022 letter you sent Kaotica shortly before filing suit: "However, it appears that Shopify did not do anything until recently …" Remarkably, you took the opposite—and false—position in the complaint . . . .

Appx2273. The District Court ultimately granted judgment as a matter of law on Iconic's breach of contract claim at trial, noting that there was "a complete absence of evidence that there was any damage to Iconic for that communication that went to Shopify" based on the same communication Kaotica highlighted to Iconic in the Sanctions Letter. Appx1335; Appx1347–48.

Second, Kaotica explained how Iconic's misrepresentation claim was contrary to what Lobbin had represented a few months earlier:

> [Y]our January [2022] letter also admits that Shopify "mistakenly thought" the [Kaotica] November 2021 letter "was a DMCA request and treated it as such." This was a Shopify mistake that, in Iconic's complaint, you tried to pin on Kaotica through the misrepresentation cause of action . . .

Appx2273. The District Court ultimately granted summary judgment against Iconic and in favor of Kaotica on Iconic's misrepresentation claim because, as Iconic admitted but then ignored, Shopify made a mistake. Appx421; Appx431 ("[THE COURT:] [T]here wasn't a misrepresentation on the part of Kaotica but, rather, it was Shopify's error, and it was corrected.").

Third, Kaotica warned Iconic that it "continue[d] to violate the Stipulated Judgment" by "advertis[ing] and promot[ing] the Version 1.0 [Old Comet]" on its social media site. Appx2274-75. That same evidence, unrebutted by Appellants, led the District Court to grant summary judgment to Kaotica for its breach of contract counterclaim. Appx421-22; Appx430.

Appellants never responded to Kaotica's Sanctions Letter.

## IV. Revisionist History

Appellants contend that by "October 2021," the same month the parties executed the Stipulated Judgment, "Iconic was showing and displaying on its website a 'Version 2' redesigned product." Br., 9. Yet the Stipulated Judgment makes no mention of a redesigned product.

Appellants also argue that the "Version 2 design is more oblong and angular at the base, includes internal ridges … and has a pop filter with a white instead of grey logo/lettering."[2] Br., 9 (citing Appx1501).

---

[2] Kaotica provided the District Court with evidence that the Version 1.0 Comet also was shown in images with white lettering: "THE COURT: They [Kaotica] included a Facebook page from January 25th of 2021 that shows the Iconic Mars Comet Version 1 with white font on the pop filter … So explain that." Appx1457-58. Appellants' only response was attorney argument about "lighting" of the identified image. Appx1458 ("ATTORNEY LOBBIN: Well, the lighting of the image shows it looks

They cite as support Lobbin's May 2025 declaration. Neither their brief nor the Lobbin declaration, however, address Iconic's sworn testimony about the alleged differences between the Version 1.0 and 2.0 Comets:

> Iconic responded [as follows to Kaotica's interrogatory:] "The primary differences between the aesthetic design of the Version 1 Comet and the Version 2 Comet is the inner cavity, which is commonly viewed by the consumer during ordinary use, as the user must install a microphone without the pop filter installed."

Appx1046.[3] That verified response does not mention Version 2.0 being "more oblong," "angular at the base," or having a pop filter with "white" rather than grey lettering. *Id.*

Here and in the related appeal (No. 25-1883), Appellants argue that Exhibit 2 wrongly shows an image of the Version 2.0 Comet rather than its predecessor. *See, e.g.*, Br., 10. While baselessly blaming this alleged error on Kaotica and its counsel, Lobbin admits he did not

---

white … The dull gray, if lit up enough, will look like this."). There are no facts in the record supporting this assertion.

[3] The answer slightly changed during the Iconic deposition where Olaleye added that the Version 2.0 Comet had a "higher density" than its predecessor. Appx804–05; Appx802 ("'Do you agree with me that the increased density for the Version 2 Comet does not affect the aesthetic design?' 'Answer: It doesn't.' Did I read that correctly? A. Yes, you read that correctly. But if I explain … THE COURT: It's a party witness. He can use his deposition for any purpose. It's fine. And, sir, your answer just at the time was 'it doesn't.'").

review what he dismissively refers to as "perfunctory and redundant exhibits" before signing off on the *sixteen*-page Stipulated Judgment. Br., 10. The District Court found fault in this excuse:

> THE COURT: Sir, this is such a terrible excuse. You [Lobbin] were representing this man [Olaleye]. You were entering a stipulated judgment with the Court that contains this language. You clearly reviewed it with him -- I hope -- before you told him to sign it. And the idea that you had him sign it without having the exhibits attached and just went, "Oh, it will be all right; whatever," and then went on to file litigation in the current case, based on that judgment, when you had every opportunity and should have taken every opportunity to look at it in detail and go, "Oh, wait. Six months ago, we entered this and this is wrong," and took no steps timely to confront Kaotica and correct it, is inexcusable.

Appx1702.

The District Court also kept Appellants in check during trial when, like now, they tried to blame Kaotica's counsel for the alleged error in Exhibit 2.[4] During his closing, Lobbin argued that Kaotica's lawyers "wrote the agreement, so if they attached the wrong product to

[4] On appeal, Appellants argue that "Kaotica misrepresented to the jury that Exhibit 2 was Version 1," and they complain that "the district court harshly chastised and reprimanded Iconic and counsel" "for testifying otherwise." Br. at 10 n. 2. As the District Court found, no evidence suggests Kaotica or its counsel "misrepresented" anything to the jury.

the agreement [as Exhibit 2], who is doing the shenanigans?" Appx1161. The District Court sustained Kaotica's objection.

During the resulting sidebar, Lobbin defended his conduct by falsely telling the District Court that "[Kaotica's counsel] just argued" that an image of Version 2.0 was attached to the Stipulated Judgment. Appx1161. The District Court corrected Lobbin that it was his "client [that mistakenly] testified it was the Version 2" attached to the Stipulated Judgment and that counsel for Kaotica "never said that." Appx1161. The District Court, showing remarkable restraint, kept the alleged reprimand limited to sidebar. And for the jury, the District Court explained that Lobbin's "argument that somehow defense counsel is misleading you is inappropriate, and you are to disregard it." Appx1162.

Appellants also assert they "tried as intently as [they] could to settle this action with Kaotica on reasonable terms." Br., 18. Before trial, however, Iconic's only settlement demands required *Kaotica* to pay it hundreds of thousands of dollars. Appx2273-76. And they simply ignored Kaotica's early offer to let Iconic sell off its admittedly infringing Version 1.0 inventory. As Kaotica explained, the "Version 1.0

sell-off, if successful, will earn your client much more than it would have made trying to sell that product in two months in 2021 under the terms of the Stipulated Judgment. Kaotica is being more than reasonable by agreeing to terms that go against the Stipulated Judgment." Appx2273-76.

Only after Kaotica obtained a $2 million judgment did Appellants finally consider the prospect of paying Kaotica. But when Kaotica did not engage with their offers equal to less than five percent of what it was ultimately owed, Appellants resorted to threats. In March 2025, Appellants drafted and sent Kaotica their Threat Letter, which contained the following statements:

- "I understand your daughter is now four years old – I trust the family is doing well. We both understand how important it is to handle things the right way."
- "Despite the judgment in the Iconic Mars case, let me make this clear: continuing to drag this out, targeting me personally, and digging into my life and business will only create consequences that extend far beyond the courtroom."

- "You have no cause to target my attorney Mr. Lobbin, who has never had any personal involvement in this dispute. Any continued harassment will have serious consequences."
- "I have no intention of standing by while you try to dismantle everything I've built. You're forcing my hand – and that is not a position you want to be in."
- "I promise you, this becomes a problem that disrupts your peace in ways you haven't even begun to consider …"

Appx2345.

## COUNTER STANDARD OF REVIEW

Pursuant to Federal Circuit Rule 28(b), Kaotica provides only the standards of review that Appellants incorrectly state in their Opening Brief.First, Appellants incorrectly assert that the exclusion of evidence under Federal Rule of Evidence 403 is reviewed de novo. Br., 41. The Ninth Circuit "review[s] a district court's evidentiary rulings for abuse of discretion." *United States v. Perez*, 962 F.3d 420, 434 (9th Cir. 2020).

Second, Appellants incorrectly include the standard of review for an alter ego determination, which is not at issue on this appeal. Br., 41. The District Court's "decision on a motion to amend the judgment is

reviewed for abuse of discretion." *BEW Loc. Union No. 100 Pension Tr. Fund v. Dale Elec., Inc.*, 165 F.3d 916 (9th Cir. 1998); *Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1148 (9th Cir. 2004) (factual findings on amending judgment are reviewed for clear error).

Third, Appellants incorrectly state the standard of review for jury instructions. Br., 41. Jury instructions are reviewed for abuse of discretion. *United States v. Sanchez*, 914 F.2d 1355, 1358 (9th Cir. 1990), *cert. denied*, 111 S.Ct. 1626 (1991). But if a formal, timely, and distinctly stated objection to the instruction is not made, the court reviews for plain error. *Id.* If the Appellant proposed the instruction, then review is totally barred under the invited error doctrine. *United States v. Martinez*, 5 F.3d 542 (9th Cir. 1993).

Appellants' citation to *Boyde v. California* is inapplicable because it only applies where "the claim is that a challenged instruction is ambiguous and therefore subject to erroneous interpretation." 494 U.S. 370, 371 (1990). Appellants do not challenge the jury instructions on this basis.

## SUMMARY OF THE ARGUMENT

This Court should affirm the District Court's judgment in full because the District Court acted within its discretion in managing trial evidence, sanctioning misconduct, preventing evasion of the judgment, and rejecting meritless post-trial challenges. Appellants engage in a quixotic tour-de-force, raising seven distinct issues on appeal—all but one of which requires a showing the District Court abused its discretion. Appellants fall far short of that burden.

First, the District Court properly exercised its discretion to exclude the Utility Patent under Federal Rule of Evidence 403 because Appellants made clear their improper intent to use the Utility Patent to redefine and expand the scope of Kaotica's Trade Dress, which is contrary to law. Kaotica consistently defined its trade dress as the product's *external* "eyeball" configuration. The central advance of the Utility Patent, by contrast, concerned *internal* acoustic cavities. The District Court reasonably found that Appellants intended to use the Utility Patent to confuse and mislead the jury into considering internal product features as elements of the Kaotica Trade Dress. The exclusion of the Utility Patent under Rule 403 was a direct result of Appellants'

refusal to abandon legally frivolous arguments despite numerous court warnings.

To the extent any error is found in the District Court's evidentiary ruling, it was harmless. Iconic stipulated that the Kaotica Trade Dress was valid, that the Version 1.0 Comet infringed the Kaotica Trade Dress, and that Iconic could only challenge the validity of Kaotica's Trade Dress if it offered a new product that was colorably different than the admittedly infringing Version 1.0 Comet. The Version 2.0 Comet at issue in this case was externally identical—and thus not colorably different—from the Version 1.0 Comet. Therefore, Iconic was barred from challenging the validity of the Kaotica Trade Dress.

Second, the District Court did not abuse its discretion in sanctioning Lobbin. The sanctions were grounded in a detailed record of Lobbin's bad-faith and vexatious conduct, including his repeated refusal to acknowledge the stipulated scope of the Kaotica Trade Dress and his continued advancement of baseless positions even after repeated judicial admonitions and warnings from Kaotica. The sanctions award was restrained rather than punitive: the court limited it to fees incurred

from the pretrial hearing forward, despite finding that the case had been *initiated in bad faith* and could have supported a blanket award.

Lobbin's claims of *pro bono* representation are not only false, but even if true, do not excuse his misconduct. And his attempt to incorporate 165 pages of prior briefing by reference violates Federal Rule of Appellate Procedure 28 and results in waiver of those arguments.

Third, the District Court properly exercised its discretion to add Olaleye to the judgment under Rule 69(a) and California Code of Civil Procedure Section 187 to prevent him from avoiding satisfaction of the judgment by shutting down Iconic and rendering it judgment-proof. Appellants fail to show any abuse of discretion in the District Court's findings that Olaleye controlled Iconic as its sole owner and decisionmaker, was solely responsible for designing and selling the willfully infringing Version 2.0 Comet, directed the underlying litigation, and shared unity of interest with Iconic.

Fourth, the District Court did not abuse its discretion in finding that Appellants' recusal challenge was substantively deficient and

untimely because it rested on ordinary judicial rulings and credibility assessments, and was filed only after adverse post-trial rulings.

Fifth, Appellants' due process claim was waived by their failure to raise it with the District Court. Appellants' due process claim also fails on the merits because the two challenged District Court statements to the jury were consistent with representations Appellants made to the District Court and thus could not create a pervasive climate of partiality and unfairness.

Sixth, Appellants waived their jury-instruction challenge under the invited error doctrine by jointly proposing the "intent" instruction with supporting case law and by failing to object timely during the charge conference. The challenge to the jury instruction on the ground that it deviates from the Ninth Circuit model instruction likewise fails because models are not authoritative or binding; they can and should be adapted to the particularities of each case, as was done here.

Finally, the District Court did not err in granting judgment as a matter of law on Iconic's breach-of-contract claim. Kaotica cannot, as a matter of law, breach a provision that imposed no obligation or restriction on Kaotica.

## ARGUMENT

### I. The District Court properly excluded Iconic's patent-based evidence under Federal Rule of Evidence 403.

#### A. The abuse-of-discretion standard applies to the District Court's Rule 403 determination to exclude the Utility Patent from trial.

"Evidentiary rulings under Rule 403 are reviewed for abuse of discretion." *City of Long Beach v. Standard Oil Co. of Cal.*, 46 F.3d 929, 938 (9th Cir. 1995); *Trevino v. Gates*, 99 F.3d 911, 922 (9th Cir. 1996) ("The district court has considerable latitude in performing a Rule 403 balancing test and we will uphold its decision absent clear abuse of discretion."); *United States v. Hinkson*, 585 F.3d 1247, 1260, 1267 (9th Cir. 2009) (en banc). If a "district court's evidentiary rulings . . . [are] not 'illogical, implausible, or without support in inferences that may be drawn from the record,' the district court did not abuse its discretion." *Roditi v. New River Invs., Inc.*, Nos. 24-4928, 24-6647, 2025 WL 3539136, at *1 (9th Cir. Dec. 10, 2025) (quoting *Murray v. S. Route Mar. SA*, 870 F.3d 915, 922 (9th Cir. 2017)). "To reverse a jury verdict for evidentiary error, Plaintiffs must also show the error was prejudicial." *Tennison v. Circus Circus Enters., Inc.*, 244 F.3d 684, 688 (9th Cir. 2001). "[A]ny error was harmless . . .[if] it is more probable than not

that the jury's verdict would have been the same had the evidence and testimony been admitted." *Roditi*, 2025 WL 3539136, at *1.

The District Court excluded Kaotica's Utility Patent under Federal Rule of Evidence 403. Appx517–20. Therefore, the abuse of discretion standard applies. Iconic incorrectly asserts that the standard is *de novo* review, citing only *United States v. Schafer*, 625 F.3d 629 (9th Cir. 2010) in support. Br. at 41. *Schafer*, however, is inapposite. It does not discuss Rule 403 but rather analyzes the District Court's exclusion of an entire defense because the appellant "fail[ed] to make a prima facie showing that he [was] eligible for the defense." *Id.* at 637.

In contrast to *Schafer*, here, the District Court excluded one piece of disputed evidence—a utility patent—not entire claims or defenses. Thus, the abuse of discretion standard applies to the District Court's Rule 403 determination to exclude the Utility Patent. *See Roditi*, 2025 WL 3539136, at *1 n.1 ("Because the district court's evidentiary rulings did not entirely preclude Defendants from presenting their damages defense, we reject Defendants' argument that *de novo* review applies.").

### B. The District Court properly exercised its discretion to exclude the Utility Patent because Iconic repeatedly made clear its intention to misuse the patent to mislead and confuse the jury regarding the scope of the Kaotica Trade Dress.

Under Rule 403, a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The District Court applied this rule to exclude the Utility Patent, and was well within its discretion to make this decision based on the case Iconic intended to present at trial.

Ninth Circuit law is clear that the right to define the trade dress belongs exclusively to its owner. *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 963 F.3d 859, 865-66 (9th Cir. 2020) ("A plaintiff may define its claimed trade dress[.]"); *Sazerac Co., Inc. v. Fetzer Vineyards, Inc.*, 251 F. Supp. 3d 1288, 1301 (N.D. Cal. 2017), *aff'd*, 786 F. App'x 662 (9th Cir. 2019). Kaotica consistently defined its claimed trade dress as "the external product configuration for a microphone noise mitigation device consisting of a spherical black body, onto one side of which is

placed a flat, circular pop filter of a contrasting color, creating the look of an eyeball." Appx1189; Appx231.

Kaotica's definition of its trade dress comprised exclusively of a set of the Eyeball product's *external* features is consistent with the trade dress's depiction in the Stipulated Judgment. Appx97–104. Kaotica repeatedly articulated that no *internal* aspects of the Eyeball product were part of—or relevant to—its claimed trade dress. Yet at every opportunity, Iconic attempted to impermissibly redefine the Kaotica Trade Dress to incorporate internal aspects of its product configuration in a plain attempt to confuse the District Court (and ultimately, the jury) as to the scope of Kaotica's Trade Dress. *E.g.*, Appx1881–83 (Iconic's brief in opposition to Kaotica's motion for summary judgment, incorrectly arguing "the inner chamber walls of the asserted trade dress are completely smooth"); Appx1951 (Iconic's proposed jury instructions redefining Kaotica's trade dress as "[a] round sphere with a smooth cutout cavity where a pop filter is inserted to resemble an eyeball"); Appx871–72; Appx899–90; Appx1094 ("Ridges on the inside.").

Lobbin, on behalf of Iconic, also argued throughout this case that the Kaotica Trade Dress "wasn't defined" in the Stipulated Judgment. Appx526. Lobbin's refusal to move away from this legally and factually wrong stance required the District Court repeatedly to correct and remind him of the Stipulated Judgment *he signed*: "THE COURT: Yes, it is defined." Appx526; *see also* Appx1613 ("[THE COURT:] The fact that you signed an agreement and agreed to be permanently [en]joined and now claim you don't know what their trade dress was is your problem, not their problem.").

Iconic was determined to redefine the Kaotica Trade Dress to include internal elements of the Eyeball product design (which were the only design elements that remotely differed between the parties' products) to confuse the jury into thinking the parties' trade dresses are more dissimilar than they were. This is why the District Court did not abuse its discretion by excluding the Utility Patent. By the time of the pretrial hearing, Lobbin and Iconic had repeatedly argued to the District Court that the inside of Kaotica's Eyeball product mattered to the question of infringement; it did not. While the District Court attempted to correct these misleading arguments pretrial, Iconic's

refusal to abandon its improper argument left the District Court no choice but to exclude the Utility Patent entirely from the parties' trial presentations to ensure such misconduct did not infect the jury's deliberations.

Even with the District Court's *in limine* ruling in place, Appellants still tried to redefine the scope of the Kaotica Trade Dress during trial. This conduct forced the District Court to admonish Iconic's counsel at sidebar: "Do not talk over me and do not yell. Calm down. The trade dress is this, the outside with the pop filter. This [inside cavity] is not part of the trade dress. All your questions about how this functions are irrelevant to the trade dress . . . . You will not ask any more questions about the cylindrical shape of the interior because it is not relevant to this case." Appx871.

The District Court's exclusion of the Utility Patent was proper for an additional reason. Asking a jury to parse patent specifications and to conduct off-the-cuff claim construction, in the middle of a trade dress case, would create precisely the confusion Rule 403 guards against. Appx517–20.

The District Court's summation of Iconic's resolve to redefine the Kaotica Trade Dress leaves no question that, absent exclusion of the Utility Patent, Lobbin and Iconic would inevitably have mislead the jury into thinking the inside of the products mattered. In awarding sanctions against Lobbin, the District Court explained:

> The most egregious conduct that permeated this litigation was Mr. Lobbin's obstinate refusal to acknowledge the scope of Kaotica's trade dress claim to which his client had previously stipulated in a judgment. He repeatedly offered improper argument and testimony in an attempt to redefine Kaotica's rights to justify the ongoing infringement.
>
> . . . .
>
> Mr. Lobbin willfully advanced these frivolous and baseless positions from the filing of this lawsuit through closing even after the Court admonished him (multiple times) not to do so.

Appx15.

The District Court's conclusion is supported by that of the Seventh Circuit when it confronted whether a Rule 403 exclusion of utility patents as evidence of functionality in a case concerning the trade dress of a French press coffee maker required a new trial. The Seventh Circuit affirmed it did not. In *Bodum*, that court excluded utility patents under Rule 403, reasoning that the patents did not claim the asserted trade dress features, their depiction of generic product

components was insufficiently probative, and admitting them would improperly invite the jury to confuse the ordinary presence of a functional component with legal functionality under trade dress law. *Bodum USA, Inc. v. A Top New Casting Inc.*, 927 F.3d 486, 497 (7th Cir. 2019).

That court continued: "I don't think it's relevant. If it's relevant, it has teeny teeny probative value, massive potential for jury confusion. It's excluded under Rule 403." *Id.* (citation omitted). The *Bodum* court went on to explain that the potential for confusion is substantial due to concerns that the jury would miss out on the nuances of the trade dress analysis and, instead, simply compare the images in the patent with those of the claimed product:

> [T]here is a massive potential for jury confusion here if these things are used in the way, frankly, that they were used during the cross-examination of the [ ] expert. You put a picture up there, that's got a handle, it's got a knob, it's got a plunger, it's cylindrical like yours, that's not what the inquiry is.

*Id.* (alterations in original).

The Seventh Circuit affirmed the *Bodum* district court's exclusion of the utility patents under Rule 403, highlighting that—like the case here—"[t]he district court did not decide the functionality question; it

determined that the patent evidence, while relevant to the question of functionality, posed too significant a risk of jury confusion." *Id.* The Seventh Circuit further concluded it was not "one of those extreme cases in which we second-guess the trial judge's weighing of the probative value of the evidence with the potential for jury confusion." *Id.* at 497–98.

The same reasoning applies here with even greater force. The excluded Utility Patent's "central advance"[5] (*TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 30 (2001)) is the interrelationship between the *inner cavities* of a noise-mitigating device capable of bearing any number of shapes, where one of those cavities is cylindrically shaped with a "substantially uniform diameter" along its axis. Appx179–80. Appellants treated this claim element as requiring a "smooth" inner cavity, and they contended since the start of this case

[5] *See Leviton Mfg. Co. v. Universal Sec. Instruments, Inc.*, 304 F. Supp. 2d 726, 735–36 (D. Md. 2004) (finding the "central advance" of the patent is its *internal* switching mechanism, not the *outward* appearance (citation omitted)); *Whoop, Inc. v. Shenzhen Lexqi Elec. Tech. Co.*, 818 F. Supp. 3d 207, 217–18 (D. Mass. 2026) (noting the "central advance claimed" in the patent is an *internal* buckle mechanism, not the design of the entire device itself at issue; *TrafFix* presumption did not attach to features that were "merely ornamental aspects of features of a product found in the patent claims" (citation omitted)).

that the Version 2.0 Comet's "internal ridges avoid[ed] Kaotica's patent." Appx1468; Appx309–10.

No patent claim encompasses the Kaotica Trade Dress, including its contrasting color-combination and "eyeball" appearance. At most, the excluded Utility Patent evidence addressed one aspect of the overall design (a spherical product), but it did not establish that the overall external visual arrangement was functional, essential to product use, or competitively necessary. *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 842-43 (9th Cir. 1987) ("[F]unctional elements that are separately unprotectable can be protected together as part of a trade dress."). This is not "one of those extreme cases" warranting reversal. *Bodum*, 927 F.3d at 497–98.

Against the backdrop of Lobbin's and Iconic's repeated attempts to create confusion regarding the scope of Kaotica's Trade Dress, the District Court had ample basis to exclude the Utility Patent. Lobbin and Iconic cannot repeatedly argue contrary to law—and against the orders of the District Court—and make plain their intention to use the Utility Patent for an improper and confusing purpose, and then

complain that a remedial Rule 403 exclusion of a Utility Patent is reversable error.

### C. Iconic's cases do not warrant reversing the District Court's Rule 403 ruling.

Iconic relies on *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23 (2001), and *Focus Products Group International, LLC v. Kartri Sales Co.*, 156 F.4th 1259 (Fed. Cir. 2025). Neither requires the District Court to admit the Utility Patent evidence Iconic sought to use.

In *TrafFix*, the Court drew a distinction between the "central advance" claimed in a utility patent and other aspects of a patented product. It does not eliminate Rule 403. *See, e.g.*, *Leviton Mfg.*, 304 F. Supp. 2d at 735 ("[T]he Court's ruling in *TrafFix* does not prohibit a finding of protectable trade dress in all cases where a utility patent is involved.").

*Focus Products* is likewise distinguishable. That case concerned the legal sufficiency of a functionality determination, not the district court's authority to manage the presentation of evidence before a jury under Rule 403. 156 F.4th at 1283–85. There, the district court entirely "ignored *TrafFix*'s instruction" and failed to analyze functionality in light of the patent at all. *Id.* at 1284–85. That was a legal error in the

functionality *determination* itself. Here, the District Court did not ignore functionality. It limited only the *form* of evidence the jury received. Appx519–20; c*f*. *Bodum*, 927 F.3d at 497–98 ("The district court did not decide the functionality question; it determined that the patent evidence, while relevant to the question of functionality, posed too significant a risk of jury confusion.").

### D. Iconic's reliance on the District Court's commentary at summary judgment is not applicable to the Rule 403 analysis at trial.

Iconic contends its patent evidence was "accepted without objection" at summary adjudication and that the district court later excluded the "same evidence" at trial. Br., 22. That argument conflates three distinct matters: Iconic's use of patent language at summary judgment; the District Court's recognition that trade-dress functionality remained a disputed merits issue; and the District Court's later, case-specific Rule 403 ruling on what evidence the jury should hear.

First, Iconic invoked patent evidence language in its summary-judgment motion (Appx301–322, Appx529–543), arguing that Kaotica's product configuration was dictated by microphone fit, sound pathways, and volume-to-surface-area ratios. But the District Court denied that

motion. Appx420–22. It did not "accept" Iconic's theory. It found genuine disputes of material fact and sent the issue to the jury. Denying summary judgment on functionality is the opposite of embracing it.

Second, the District Court recognized that if the dispute proceeded to trial, Kaotica would need to establish "what constitutes the trade dress" and "what is functional [and] what is not." Appx431–32. That observation acknowledged a jury question. It did not address the admissibility of patent evidence, much less require its admission at trial.

Third, the District Court's consideration of legal arguments at summary judgment says nothing about admissibility before a jury where Rule 403 balancing becomes paramount. The District Court was free, and correct (indeed, *obligated*), to manage what evidence the jury received.

What the record shows is a District Court that treated functionality as a jury issue, allowed Lobbin and Iconic to argue functionality, and exercised its Rule 403 discretion at the appropriate stage to exclude patent evidence while preserving their ability to argue

for alleged functionality of the trade dress. The rulings were consistent throughout the case—not the contradiction Appellants portray.

### E. Even if not properly excluded under Rule 403, the District Court's exclusion of the Utility Patent was harmless because the Stipulated Judgment prohibits Iconic from challenging the validity of Kaotica's Trade Dress.

Iconic stipulated that the Kaotica Trade Dress was "valid and subsisting." Appx92. The contractual right to challenge that validity was reserved only for products "more than colorably different from the Accused Products." Appx93. Because that threshold was never crossed, Iconic's conditional right to relitigate functionality was never triggered.

The reason is straightforward: Comet Versions 1.0 and 2.0 are externally visually identical. Iconic admitted this in its verified interrogatories and deposition testimony (and only later—including on appeal—tried to muddy the waters by pretending its discovery responses were non-binding). Because the two products are visually indistinguishable on the exterior, internal redesigns are irrelevant to the trade dress functionality analysis. Patent evidence concerning functional changes to the product's *interior* are irrelevant to the

protectability of an *exterior* trade dress that Appellants already conceded was valid.

Even if the excluded patent evidence could theoretically support a functionality challenge, it would have been deployed against a trade dress Iconic had already conceded was valid, on behalf of a product visually identical to the one Iconic admitted infringed. Under those circumstances, the patent evidence could not have changed the outcome. There is no cognizable prejudice.

## II. The District Court did not abuse its discretion in sanctioning Lobbin.

Lobbin claims the District Court abused its discretion when it found him personally liable for part of Kaotica's attorneys' fees. His arguments, however, distort what took place in front of the trial judge.

Lacking any valid reason to challenge the court's judgment, Lobbin resorts to ad hominin attacks. He accuses the District Court of (i) "unprecedent bias, ire, [and] personal attacks," (ii) disliking Lobbin's "personality"; and (iii) looking for ways to "punish[] counsel in any way possible." Br., 44. None of that is true. The District Court and Kaotica behaved professionally and confined their arguments to the merits.

Only Lobbin and his clients resorted to personal attacks. *See, e.g.*, Appx1161–62 ; Appx2394.

The District Court meticulously anchored its sanctions decision in undisputed facts. Contrary to Lobbin's assertion that the "[D]istrict [C]ourt ultimately did not support its sanctions order with any specifics," Br., 46, beginning with what the District Court referred to as Kaotica's "compelling summary of the history of this litigation and the unreasonable and vexatious conduct of Mr. Lobbin," the court recounted numerous reasons why Lobbin's conduct called for a serious "sanctions award." Appx15–16; Appx42–44; Appx1400–02.

Lobbin claims the District Court's "orders have caused Iconic and counsel incredible anxiety personally, which was unnecessary and unfair." Br., 32 n.21. And he "implore[s]" this Court "with all that is righteous in our system of fair justice" to undo or lessen the sanctions award. Br., 48. In March 2025, Lobbin helped his client draft an unseemly Threat Letter addressed to Konrad and Olivia Zukowski, Kaotica's owners. Appx2394 and Appx2345. Olaleye explained that "Lobbin directed me to write" the "letter and add his input, pressuring me to revise my draft with language about severe consequences" for

Kaotica. Appx2370. Olaleye begins the "Lobbin[-]directed" letter to Konrad and Olivia Zukowski by stating, "I understand your daughter is now four years old." Appx2345. He goes on to state that "continuing to drag this out . . . will only create consequences that extend far beyond the courtroom" and that any "continued harassment" of Lobbin "will have serious consequences" for Kaotica's owners. Appx2345.

Lobbin filed a baseless case, litigated it unreasonably, and is now on the verge of finally being held accountable for his misconduct. That accountability comes after what the District Court recognized was a clearly documented pattern of "conscious disregard for facts and law demonstrated by Lobbin" evidenced by numerous prior sanctions levied against him. Appx43; Appx2238. This history—and Lobbin's failure to adjust his conduct in response—lent support to the District Court's award of sanctions to attempt to deter him from repeating such behavior in the future. *See Bullard v. Chrysler Corp.*, 925 F. Supp. 1180, 1190 (E.D. Tex. 1996); Appx43–44.

Yet Lobbin's "conscious disregard for facts and law" continues on appeal. Appx43. First, he faults the trial court for "never car[ing] that counsel was appearing *pro bono* to help a small company survive the

litigation process." Br., 44. There was, of course, nothing for Iconic to "survive" because it was *Iconic* that sued *Kaotica*. Had Lobbin and his clients honored their promises in the Stipulated Judgment, this case would not exist.

The District Court also did nothing wrong by ignoring Lobbin's allegations of *pro bono* representation. Even if true, it would be irrelevant to a court's decision whether to impose sanctions. "Courts cannot be expected to base codes of proper conduct on whether, or how much, counsel is paid for his or her work. We think that a system which attempted to encourage lawyers to handle . . . cases *pro bono* by exempting them from the rules that other attorneys must follow would be not only unwise and unworkable, but perverse." *Foster v. Mydas Assocs., Inc.*, 943 F.2d 139, 144 (1st Cir. 1991).

Lobbin's *pro bono* claims are false, including that he "***continued representing Iconic pro bono to this day***." Br., 13 (emphasis in original). His own client disputes this contention. In a *pro se* filing Olaleye made in August 2025, he wrote: "No pro bono agreement was ever signed in connection with this litigation" and "as the case progressed, *Lobbin began pressuring me for payment*." Appx2369

(emphasis added). Olaleye "believed that if [he] didn't cooperate or make payments, Iconic Mars could lose legal representation in the middle of an ongoing litigation." *Id.*; Appx2391–92 (Lobbin confirming receipt of Olaleye's $5,000 payment in November 2024).

Second, Lobbin claims neither Kaotica nor the court gave him "any warning of sanctions under Rule 11, Rule 37, or any other statute or rule." Br. at 44. "District courts 'have inherent authority to discipline lawyers.'" *Swisher Hygiene Franchise Corp. v. Barton*, No. 20-16727, 2022 WL 1055563, at *1 (9th Cir. Apr. 8, 2022) (quoting *Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128, 1131 (9th Cir. 1995)). "[T]he essential element in triggering the award of fees is therefore the existence of 'bad faith' on the part of the unsuccessful litigant." *Hall v. Cole*, 412 U.S. 1, 5 (1973). A "warning" is not required.

Nevertheless, warnings *were* given; Lobbin simply disregarded them. On July 14, 2022, Kaotica sent its Sanctions Letter detailing how "Iconic's claims are based on allegations that are simply untrue," warning that Kaotica may seek "sanctions for maintaining positions that [Appellants] know lack evidentiary support (and, indeed, are contrary to the evidence." Appx2273-76. Lobbin likewise chose to

disregard the District Court's repeated warnings. Appx782–83 ("[THE COURT:] You've been playing fast-and-loose with a lot of things including in your opening statement yesterday . . . . *You need to be more careful with the facts in this case*. . . . the Court does not appreciate this sort of shuffling around here with the facts and the law. So don't try and disparage them for being calling you to task when your side has been less than prepared and following the rules." (emphasis added)); Appx1399–1402 ("[LOBBIN:] I had no belief that there was -- I was one step away from some sort of death-penalty sanctions that's going to ruin my 30-year career and harm my family. So that happened at trial. THE COURT: Then you weren't listening . . .).

Third, Lobbin says that "the record does not support" Appellants' refusal to acknowledge the scope of the Kaotica Trade Dress as they attempted to redefine it. Br., 46. This allegation further demonstrates his "conscious disregard for facts" (Appx43). Lobbin argued in court that the "trade dress, over my objections, was not defined in the settlement agreement." Appx1609. Despite the admission in the Stipulated Judgment that the 'Kaotica Trade Dress is valid," Lobbin told the court that "[w]e don't admit to the validity of any trade dress." Appx1610.

And he stressed that "the first case was settled on . . . a trade dress that wasn't defined," to which the District Court reiterated, "Yes, it is defined." Appx526. In Iconic's proposed jury instructions, Appellants tried to redefine the trade dress as covering a "round sphere with a *smooth cutout cavity*." Appx1951.[6]

In response to Lobbin's extensive misconduct that began with the complaint itself, the District Court exercised restraint and sanctioned Lobbin only the amount of fees starting from the pretrial hearing. Appx44. This amount was not punitive, as Lobbin claims (Br., 45), it was to compensate for his misconduct that forced Kaotica to go to trial when the "case [was] initiated in bad faith" and should never have been filed. Appx42–44 (acknowledging that the court could have, but did not, make a blanket award of fees).

Lobbin ends his challenge to the District Court's sanctions findings by "incorporat[ing] herein by this reference because of space limitations" 165 pages of briefing before the District Court. Br., 48

---

[6] To be sure, the District Court did not prohibit Iconic and Lobbin from referencing the *ribbed* inner chamber of the Comet 2.0 as a feature of the *product*. Appx564. They could not, however, tell the jury that the *Kaotica Trade Dress* required or included a *smooth* inner chamber.

(citing Appx1465–1630). Such "[a]rgument by incorporation . . . is a violation of Fed. R. App. P. 28(a)(6)" and any such arguments are waived. *Medtronic, Inc. v. Teleflex Life Scis. Ltd.*, 86 F.4th 902, 906–07 (Fed. Cir. 2023) (second alteration in original) (quoting *Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1335 (Fed. Cir. 2006)). "It would be fundamentally unfair to allow a party to use incorporation to exceed word count" as Appellants attempt to do here. *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 910 (Fed. Cir. 2014). Kaotica has therefore only responded to arguments properly raised in Appellants' brief.

## III. The District Court properly added Iconic's CEO, Olaleye, to the Final Judgment.

Olaleye willfully copied Kaotica's trade dress and, with Lobbin's support, vexatiously litigated this case with no intention to bear the consequences of his frivolous claims or Iconic's willful infringement. Olaleye admitted he never thought he could be "held financially responsible for any aspect of the case." Appx2369. Immediately after losing at trial, Olaleye undertook actions to make Iconic judgment-proof while simultaneously carrying on and reaping the benefits of Iconic's business under another name, Audio Icon. Even after Kaotica sought

leave to add Olaleye to the judgment, Olaleye bragged on Instagram that he shut down Iconic to avoid payment. Appx2347-48 ("I hope you guys don't think I'm going to take millions of dollars and give it to Konrad Zukowski [Kaotica's CEO] – after I shut down my company.").

California Civil Procedure Code Section 187 facilitates the addition of judgment debtors to prevent precisely this sort of inequitable conduct. By adding Olaleye to the judgment individually, the District Court did what was necessary to prevent him from unjustly avoiding paying the judgment owed to Kaotica.

Under Federal Rule of Civil Procedure 69(a), to amend a judgment under Section 187, two requirements usually must be met: "(1) that the new party be the alter ego of the old party *and* (2) that the new party had controlled the litigation, thereby having had the opportunity to litigate, in order to satisfy due process concerns." *In re Levander*, 180 F.3d 1114, 1121 (9th Cir. 1999) (quoting *Triplett v. Farmers Ins. Exchange*, 24 Cal. App. 4th 1415, (1994)). But an alter ego finding is not required; a "court may grant amendment under § 187 even if the new party does 'not meet the formal requirements for alter ego liability,' so long as addition of the new party 'fit[s] within the theory underlying

amendment of a judgment based on alter ego liability.'" *Moonbug Ent. Ltd. v. BabyBus (Fujian) Network Tech. Co.*, No. 21-cv- 06536-EMC, 2025 WL 445801, at *2 (N.D. Cal. Feb. 10, 2025) (alterations in original) (quoting *In re Levander*, 180 F.3d at 1122); *Carolina Cas. Ins. Co. v. L.M. Ross L. Grp.*, 212 Cal. App. 4th 1181, 1188–89 (2012) ("[E]ven if all the formal elements necessary to establish alter ego liability are not present, an unnamed party may be included as a judgment debtor if 'the equities overwhelmingly favor' the amendment and it is necessary to prevent an injustice." (citation omitted))).

Where, as here, the District Court amended the judgment to avoid inequities, Kaotica was required to show only "that (1) the parties to be added as judgment debtors had control of the underlying litigation and were virtually represented in that proceeding; (2) there is such a unity of interest and ownership that the separate personalities of the entity and the owners no longer exist; and (3) an inequitable result will follow if the acts are treated as those of the entity alone." *Relentless Air Racing, LLC v. Airborne Turbine Ltd. P'ship*, 222 Cal. App. 4th 811, 815–16 (2013); *In re Levander*, 180 F.3d at 1122; *Innovation Ventures,*

*LLC v. N2G Distrib., Inc.*, No. SACV 12-717 ABC (Ex), 2014 WL 10384631, at *3 (C.D. Cal. Feb. 18, 2014).

"The decision to grant an amendment in such circumstances lies in the sound discretion of the trial court. The greatest liberality is to be encouraged in the allowance of such amendments in order to see that justice is done." *In re Levander*, 180 F.3d at 1122 (quoting *Carr v. Barnabey's Hotel Corp.*, 23 Cal. App. 4th 14, 20-21 (1994)). Against this legal backdrop, the District Court did not abuse its discretion by adding Olaleye to the final judgment.

### A. The District Court did not err when finding that Olaleye controlled the litigation.

Appellants do not dispute that Olaleye, as the sole owner and operator of Iconic, controlled the underlying litigation and was virtually represented in that proceeding. Appx1449, 1451 ("It is a single-person company;" "Mr. Olaleye, being the sole member of the company."); Appx731-732 (Olaleye designed and marketed infringing Comet 2.0 product); Appx793 (Olaleye made decision to frivolously sue Kaotica); Appx772, 776; Appx2080 (Olaleye as Iconic's only party trial witness); *see also* Appx22. As the founder, owner, and sole decision-maker at

Iconic, he had control over and his interests were represented in the litigation.

### B. The District Court did not err in finding a unity of interests.

The District Court did not err in finding a unity of interest between Olaleye and Iconic (now operating as Audio Icon). *See* Appx22. The month after trial (July 2024), Olaleye closed Iconic's sole bank account and transferred its remaining funds to himself. Appx2310-12. Olaleye then registered a new entity, "Audio Icon," in California on November 12, 2024 and began advertising it as offering the same type of products as Iconic and Kaotica (*i.e.*, portable isolation booth and their accessories). Appx2333-38. Lobbin confirmed Audio Icon was nothing more than a straightforward continuation of Iconic's same business under a new name, explaining, "[t]he other lines of business [remaining for Iconic] were consolidated with his other [Audio Icon] company for business purposes." Appx1449.

Olaleye executed the formal paperwork to dissolve Iconic on January 16, 2025—the same day Olaleye attended the hearing on Kaotica's motion for attorneys' fees and sanctions. Olaleye filed Iconic's

dissolution one day later. Appx2314-16. Olaleye also used Iconic's brand to direct online search traffic to Audio Icon. Appx2340.

Iconic's argument that the District Court erred in allegedly making a "post-judgment 'alter ego' determination" (Br., 48–49) fails because the District Court simply did not make an alter ego finding. Rather, based on the above record, it made the distinct alternative finding of unity of interests. Appx22; *Innovation Ventures*, 2014 WL 10384631, at *3; *In re Levander*, 180 F.3d at 1122.

### C. The District Court acted well within its discretion to add Olaleye to the Final Judgment.

Appellants' remaining arguments that Olaleye was "denied his right to a jury trial," that Kaotica was required to "sue Mr. Olaleye" personally "or amend its claim . . . to add him as a party,"[7] and that Kaotica's motion was "untimely" are all contrary to California law.

[7] It would have been improper for Kaotica to raise the alter ego or unity theory at or before trial because it was *only after trial* that Olaleye appears to have substantially abused the corporate form, including by closing Iconic's bank account, transferring Iconic's funds to himself, and transferring Iconic's business operations to Olaleye's newly created entity, Audio Icon, which sells products identical to those Iconic offered. *Wells Fargo*, 227 Cal. App. 4th at 8 (allowing post-judgment amendment where plaintiff learned after judgment that entity had been dissolved and its business continued under a new name).

Br., 34, 48, 49. "Even if [plaintiff] could have pursued a theory of alter ego, there was no bar to doing so after judgment. Code of Civil Procedure section 187 may be used, 'at any time so that the judgment will properly designate the real defendants.'" *Wells Fargo Bank, N.A. v. Weinberg*, 227 Cal. App. 4th 1, 7 (2014) (quoting *Greenspan v. LADT, LLC*, 191 Cal. App. 4th 486, 517 (2010)); *Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1148 (9th Cir. 2004) ("adding a party to a judgment after the fact does not present due process concerns" where equity requires it); *Danko v. O'Reilly*, 232 Cal. App. 4th 732, 741 (2014) ("A court may amend judgment to properly designate defendants at any time. It is not necessary that alter ego doctrine be alleged or proved in the underlying lawsuit." (citations omitted)). Iconic's only cited case applying Nevada law is not to the contrary. *Star Mountain Plan Tr. v. Titan Mining (US) Corp.*, No. CV-22-01389-PHX-GMS, 2023 WL 2355916, at *5 (D. Ariz. Feb. 3, 2023) (discussing "the elements of Nevada's alter ego liability statute"). The District Court acted within its discretion by correctly applying California law to ensure Olaleye did not escape accountability by merely shutting down his company.

## IV. The District Court did not err in finding Appellants' recusal request facially insufficient and untimely.

Appellants' effort to recuse Judge Bencivengo was unfounded, untimely, and another tactic to avoid accountability for Lobbin's, Iconic's, and Olaleye's malfeasance. The standard for recusal under 28 U.S.C. §§ 144 and 455 is "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned" or where she has a personal bias or prejudice concerning a party. *United States v. Studley*, 783 F.2d 934, 939 (9th Cir. 1986) (citations omitted).

Appellants allege three facially insufficient bases: (i) not permitting Lobbin and Iconic to advance their post-hoc uncorroborated position that the Stipulated Judgment included the wrong attachment, (ii) positing Iconic "should perhaps be talking to [Lobbin's] malpractice carrier" because Iconic sought untimely relief years after it and Lobbin executed the Stipulated Judgment that Lobbin admitted to not reviewing, and (iii) rejecting Lobbin's invitation for Judge Bencivengo to confer with other judges as to his reputation. Br., 28–34, 50–51.

### A. Appellants' recusal allegations are facially deficient.

Most of Appellants' bases for recusal center on Judge Bencivengo's refusal to allow Appellants to argue—for the first time in rebuttal closing argument at trial and thereafter—that despite executing the Stipulated Judgment in 2021, suing Kaotica based on that contract, and litigating this case to trial in June 2024, neither Lobbin nor Iconic ever realized the Stipulated Judgment included the supposedly wrong product image as a crucial exhibit, and that this was due to *Kaotica's* counsel's "shenanigans" in "attach[ing] the wrong product to the agreement." Appx1160-61. That is neither credible nor corroborated. Instead, it is contradicted by years of Appellants' reliance on the same exhibits to the Stipulated Judgment that they only decided were wrong when they were no longer beneficial to them at the conclusion of trial.

Judge Bencivengo was permitted to find this argument unbelievable based on the record before her, including Appellants' own arguments just two days earlier. Appx928–29 (Lobbin, on behalf of Iconic, unsuccessfully opposed JMOL arguing only that Olaleye was "confused," and that "the product in the stipulated judgment, everyone agrees, is the Version 1. Everything was clear about that. That was the

product at issue in the lawsuit, *so obviously it can't be Version 2*." (emphasis added)). When that argument failed, Lobbin changed course in closing to contrive some justification for Olaleye's confusion.

Appellants cannot show bias by alleging Judge Bencivengo reasonably criticized, admonished, or expressed disbelief of their positions. *Liteky v. United States*, 510 U.S. 540, 555–56 (1994) ("[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings . . . do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."); *Toth v. Trans World Airlines, Inc.*, 862 F.2d 1381, 1388 (9th Cir. 1988) (no prejudice sufficient for recusal where judge "stated in open court that he does not believe one of my counsel's explanations of the events in this case and that her credibility with the judge is 'about zero'"); *United States v. Scholl*, 166 F.3d 964, 977 (9th Cir. 1999) (judge "may participate in the examination of witnesses to clarify evidence, confine counsel to evidentiary rulings, ensure the orderly presentation of evidence, and prevent undue repetition" (citation omitted)); *Leslie v. Grupo ICA*, 198 F.3d 1152, 1156 (9th Cir. 1999) (affirming recusal

denial where judge granted summary judgment to opposing party because court appropriately made credibility determination that witness committed perjury).

Likewise insufficient is Judge Bencivengo's reference to Lobbin's malpractice carrier after Lobbin admitted he did not review the exhibits to the Stipulated Judgment before executing it on behalf of Iconic and Olaleye. Appx1456-60. *Charron v. United States*, 200 F.3d 785, 789 (Fed. Cir. 1999) (affirming denial of recusal where judge "accused [party's attorney] of malpractice, defrauding the court, filing a frivolous action, and doctoring the record" because "viewed in context, they reflected [the judge's] concern over [attorney's] failure" to adequately represent the client in the litigation and "do not establish either personal bias and prejudice or the appearance of partiality").[8]

Lastly, Judge Bencivengo's rejection of Lobbin's multiple requests that she survey other judges for their opinions does not give any reasonable appearance of bias against Appellants. Lobbin repeatedly created the *appearance* of, and asked for information that he believed

[8] A later filing by Olaleye reinforced Judge Bencivengo's concerns, detailing Lobbin's neglect in his representation of Olaleye. *See generally* Appx2367-2502.

would, bias the court *in his favor*. *See, e.g.*, Appx1364 n.2 ("[T]his Court is invited to confer with District Judge Robert S. Huie about the advocacy and professionalism of the law firm and Mr. Lobbin."); Appx1377 ¶ 5 (same); Appx1457 (Lobbin's Law360 interview stating, "[a]s a . . . local practitioner who knows these federal judges personally, I trust some modicum of understanding, temperance and forgiveness will work its way into the final result in this case.").

Lobbin repeated his improper requests at the hearing: "I would invite, and I request, that the Court consult with some of your colleagues–" (Appx1410–11), at which point Judge Bencivengo interjected, "Absolutely not. Totally inappropriate" (*id.* ("I am not going to go lobby my colleagues for an overall, 'Is this guy a good guy?' I am looking at what you did here and whether or not, in what you did here, it was both objectively and subjectively bad faith.")). Judge Bencivengo was within her discretion to correct the appearance of bias Lobbin was attempting to create *in his favor* and to discourage him from doing so further by explaining that soliciting opinions from other members of the judiciary is not only "inappropriate" to consider but also not as laudatory as Lobbin believed. *Id.*

No reasonable observer hearing Judge Bencivengo's comments in context could conclude that some passing awareness of her judicial colleagues' understanding of Lobbin's public litigation history has any appearance of bias—or that she issued her sanctions order on any basis other than the magnitude of Lobbin's wrongdoing. *See United States v. Holland*, 519 F.3d 909, 914 (9th Cir. 2008) ("The reasonable person in this context means a well-informed, thoughtful observer, as opposed to a hypersensitive or unduly suspicious person." (citation omitted)); *Bassett Unified Sch. Dist. v. Superior Ct.*, 89 Cal. App. 5th 273, 291 (2023) ("[A] judge is not biased, nor would a reasonable person believe otherwise, simply because the judge—by no action of his or her own—receives a biased ex parte communication from a third party about the pending matter."); *see also Jones v. Luebbers*, 359 F.3d 1005, 1009 (8th Cir. 2004) (affirming recusal denial despite judge "admit[ing] that he discussed [counsel's] conduct in the earlier cases with several other judges").

Further, comments among the judiciary are inherently not from an extrajudicial source and thus cannot support a recusal. *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966) ("The alleged bias and

prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from [her] participation in the case."); *see also United States v. Sims*, 845 F.2d 1564, 1570 (11th Cir. 1988) (explaining facts that a judge discovers "in his judicial capacity" are of a "judicial, rather than a personal, nature" and therefore do not stem from an extrajudicial source); *Tejero v. Portfolio Recovery Assocs., L.L.C.*, 955 F.3d 453, 463–64 (5th Cir. 2020) (affirming recusal denial where judge independently compiled list of cases in which movant's attorneys had served as counsel as not "extrajudicial").

Judge Bencivengo did not abuse her discretion in denying recusal under Sections 144 and 455. Nothing in Appellants' histrionic attacks on her throughout their brief warrant reversal of that decision.

### B. Appellants' recusal motion was untimely.

Appellants do not challenge Judge Bencivengo's findings that their bases for recusal were not timely raised. Br., 31–34, 50–51. Any such argument is thus waived.

"A motion under section 144 must be timely, *i.e.,* the motion should be made at the earliest possible moment after obtaining facts

demonstrating a basis for recusal," while a motion under section 455 "must be timely." *United States v. Bell*, 79 F. Supp. 2d 1169, 1172 (E.D. Cal. 1999). Appellants strategically waited to seek recusal until after Judge Bencivengo issued a series of adverse orders during the year following trial, including awarding attorneys' fees personally against Lobbin. Appx1207–08 (trial verdict entered June 13, 2024); Appx2–18 (February 5, 2025 Sanctions Order); Appx1631–1807 (June 2, 2025 recusal motion). Appellants knew of their alleged bases for recusal for at least months—and in some cases over a year—before filing the recusal motion just four days after Judge Bencivengo issued the written order granting Kaotica's motion to amend to add Olaleye individually to the judgment. Appx1631–51; Appx20–23.

This Court has warned that recusal motions made after the entry of judgment—as Appellants did here—are presumptively untimely. *United States v. Studley*, 783 F.2d 934, 939 (9th Cir. 1986); *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1295 (9th Cir. 1992)) (Recusal motion made after entry of judgment was untimely; "[t]o hold otherwise would encourage parties to withhold recusal motions, pending a resolution of their disputes on the merits, and then if necessary

invoke section 455 in order to get a second bite at the apple.”). Regardless of the presumption, waiting months to seek recusal after adverse rulings is untimely. *See Wood v. McEwen*, 644 F.2d 797, 802 (9th Cir. 1981).

Appellants’ remaining argument attempts to incorporate by reference their recusal motion submitted to the District Court. Br., 50 (citing Appx1631–1807). “[A]rgument by incorporation,” however, “is a violation of Fed. R. App. P. 28(a)(6),” and incorporated arguments are waived. *Medtronic*, 86 F.4th at 906–07 (alterations in original) (citation omitted).

**C. Because Appellants failed to state any bases for recusal and failed to timely file, Judge Bencivengo did not abuse her discretion is refusing to refer the recusal motion.**

Section 144 requires that affidavits must be both timely and sufficient. Appellants’ affidavits are neither—nor have Appellants represented their motions were timely on appeal, thus waiving argument on and defeating their argument. Appx26, 29. With no “argument to support its assertions” and no cites to authority, such “[i]nadequately briefed and perfunctory arguments are [] waived.” *Cal. Pac. Bank v. FDIC*, 885 F.3d 560, 570 (9th Cir. 2018). Therefore,

assignment to another judge was not required. 28 U.S.C. § 144; *Terrell v. Att'y Gen.*, No. C-98-00219-VRW, 1998 WL 574387, at *4 (N.D. Cal. Aug. 31, 1998), *aff'd sub nom. Terrell v. Lungren*, 188 F.3d 515 (9th Cir. 1999) ("A judge need not refer the motion to another judge unless the affidavit is legally sufficient to support the underlying motion. 'Only after the legal sufficiency of the affidavit is determined does it become the duty of the judge to proceed no further in the case.'" (quoting *United States v. Azhocar*, 581 F.2d 735, 738 (9th Cir. 1978))).

## V. The District Court did not deny due process to Appellants.

Appellants argue the District Court denied them due process on two grounds: (1) after Iconic's CEO, Olaleye, confused which version of the Comet is depicted in Exhibit 2 to the Stipulated Judgment, the District Court stated, "I think you might want to reconsider your response;" and (2) the District Court instructed the jury that "Olaleye mistakenly thought that [Exhibit 2] was -- was rather adamant that that was a picture of the Version 2. It couldn't have been. It wasn't." Br., 51–52. Appellants, however, waived any due process claim by failing to raise it to the District Court. *Larsen v. Comm'r Soc. Sec. Admin.*, 328 F. App'x 578, 579 (9th Cir. 2009) (because appellant "failed

to raise a due process claim before the district court, this claim is waived on appeal" (citing *Edlund v. Massanari*, 253 F.3d 1152, 1158 & n. 7 (9th Cir. 2001), and *Crawford v. Lungren*, 96 F.3d 380, 389 n. 6 (9th Cir. 1996))).

Appellants' due process claim also fails on the merits. Two instances when the District Court made statements in front of the jury that were consistent with representations Appellants made to the District Court cannot rise to the "'extremely high level of interference' by the trial judge which creates 'a pervasive climate of partiality and unfairness'" to support reversal. *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995) (quoting *United States v. DeLuca*, 692 F.2d 1277, 1282 (9th Cir. 1982)).

## VI. The District Court did not err in providing the jury with the "intent" instruction to which Iconic repeatedly agreed.

Without citation to case law, Iconic alleges error in the District Court's instruction regarding "intent" as one of many factors to consider under the likelihood of confusion analysis. Br., 53. Ample case law confirms the instruction was not erroneous, and Iconic waived review of any hypothetical error by inviting it.

Iconic challenges the District Court's language added to the model instruction concerning the relevance of a prior litigation or relationship between the parties. Br., 53. The Ninth Circuit itself acknowledges that using model instructions is "not mandatory" and the instructions "are not a substitute for the individual research and drafting that may be required in a particular case." 9th Cir. Model Civ. Jury Instr., Intro. (2025); *United States v. Pimentel-Lopez*, 859 F.3d 1134, 1143 (9th Cir. 2016) ("Model instructions and forms are not authoritative[.]"). Iconic provides no contrary authority; thus, there is no error in merely deviating from model instructions.

Any review of the "intent" instruction is also barred by the invited error doctrine because Iconic *jointly* proposed the instruction (together with substantiating authority for the now-challenged language) and failed to timely object to it at the charge conference. Any alleged "error is waived and unreviewable when a[n Appellant] both invites the error and affirmatively relinquishes or abandons a known right. A challenge to a jury instruction is waived under the invited error doctrine when, in spite of being aware of the applicable law, the defendant accepts a

flawed instruction." *United States v. Leal-Cruz*, 431 F.3d 667, 669 (9th Cir. 2005). Appellants meet this standard.

First, Iconic invited the alleged error by jointly proposing the intent instruction with Kaotica in the Proposed Pretrial Order. Appx2055-59; Appx1082:4–8 ("This instruction . . . is the instruction that was provided as a joint instruction of the parties. It was approved on two separate occasions after that, with no objection."); Appx1195. The Local Civil Rules of Practice for the Southern District of California required Iconic to include any objections to proposed instructions when filing the pretrial order: "If a party disagrees with a particular instruction, the party must submit an alternate instruction." CivLR 16.1(f)(6)(c)(7). Iconic failed to do so. *See Logtale, Ltd. v. IKOR, Inc.*, 738 F. App'x 422, 424 (9th Cir. 2018) (finding "stipulated to the jury instructions and therefore affirmatively waived any objection").

Second, Iconic was aware of the applicable law prior to jointly submitting the instruction, as confirmed by the "Authorities" the parties jointly submitted with their proposed jury instructions. Appx2058-59 (citing, *e.g.*, *VenVest Ballard, Inc. v. Clockwork, Inc.*, No. ED CV 14-00195-MWF (Ex), 2015 WL 12745801, at *8 (C.D. Cal. Feb.

11, 2015) (finding that "case law establishes a strong inference of intent [where] the parties have had a prior relationship." (citing *Beer Nuts, Inc. v. Clover Club Foods Co.*, 805 F.2d 920, 927 (10th Cir. 1986) ("The inference of intent is especially strong when the parties have had a prior relationship.")); *adidas Am., Inc. v. Skechers USA, Inc.*, 149 F. Supp. 3d 1222, 1246 (D. Or. 2016) (explaining "the long history of disputed shoe designs between these parties suggest Skechers acted in bad faith"), *aff'd in relevant part, rev'd in part*, 890 F.3d 747 at 758 (9th Cir. 2018) ("In light of the parties' litigation history, Skechers undoubtedly knew of adidas's Three–Stripe mark when it conceived of its Cross Court shoe." (internal citations omitted))).

Thus, Iconic's argument that the intent language "has no support in the law, or in logic" and was "unfairly prejudicial" to the jury is contradicted by cases Iconic knew existed and that it submitted to the District Court in support of the precise language it now claims is error. Br., 53. During trial, Iconic's counsel confirmed this: "I don't doubt there's authority for" the added language." Appx1084:5–7. *Leal-Cruz*, 431 F.3d at 669.

Third, Iconic accepted the instruction because it did not timely object during the charge conference, at which the District Court instructed the parties to raise any remaining objections (Appx1004:18–24, Appx1014:14–Appx1015:15). It was not until the final day of trial (on the morning the District Court instructed the jury) that Iconic first objected to the "intent" instruction (Appx1080:1–Appx1084:20). Fed. R. Civ. P. 51(c)(2) (to be timely, the objection must occur when the court provides for objections on the record); *Ramirez v. Towe*, No. CV 15-02179-MWF (FEMx), 2017 WL 11648982, at *11 (C.D. Cal. July 10, 2017) ("In choosing to withhold his objections until after the designated time, Officer Towe 'intentionally relinquished or abandoned a known right.'" (quoting *United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997) (en banc))).

Because the District Court instructed the jury consistent with the law and the parties' agreed-to instructions, there is no error. Iconic also waived review of any error by assenting to the instruction.

## VII. The District Court did not err in granting judgment as a matter of law on Iconic's claim for breach of contract.

The District Court correctly granted judgment as a matter of law on Iconic's breach of contract claim because the provision Iconic alleged

was breached did not create "any obligation or restriction on the part of Kaotica." Appx1348. Iconic alleged that Kaotica breached Paragraph 12 of the Stipulated Judgment. Appx82; Appx2072 ("Kaotica breached the contract . . . in violation of Paragraph 12 of the Stipulated Judgment."). Paragraph 12, however, neither restricts nor imposes any obligations on Kaotica. Appx93.

Under California law, "[b]reach of contract rests upon a failure to perform an enforceable obligation, and, if there is no such obligation, there can be no breach." *Scott v. Sec. Title Ins. & Guarantee Co.*, 9 Cal. 2d 606, 614 (1937); *accord Ray v. Google LLC*, No. 23-3987, 2025 WL 2058822, at *1 (9th Cir. July 23, 2025) ("Google cannot breach a promise that does not exist, and the district court properly held that Ray failed to state a claim for breach of contract."), *cert. denied*, No. 25-6976, 2026 WL 1203422 (U.S. May 4, 2026); *Lee-Davis v. Gap, Inc.*, No. 5:20-CV-2257, 2022 WL 624517, at *2 (N.D. Ohio Mar. 3, 2022) ("Plaintiff's contentions that Defendant somehow breached this provision cannot stand as a matter of law. Defendant had no obligations under the provision, and Plaintiff therefore cannot premise her breach of contract on [that provision]."). The District Court's ruling that

Kaotica did not breach Paragraph 12 of the Stipulated Judgment is correct because that paragraph creates no obligation for Kaotica.

Iconic's briefing confirms this. It argues only that the "ruling was erroneous because *whether Iconic's continuing to advertise on Facebook* . . . was permissible under the Stipulated Judgment should have been a question for the jury to answer." Br., 54 (emphasis added). But whether *Iconic's* actions were permissible or not under the Stipulated Judgment is irrelevant to whether *Kaotica* breached any obligation under the Stipulated Judgment.[9]

## CONCLUSION

This Court should affirm the judgment of the United States District Court for the Southern District of California.

[9] Iconic requests the relief to "reverse the JMOL against Iconic on its . . . interference and unfair competition claims." Br., 55. The District Court did not grant JMOL on those claims. The District Court submitted Iconic's interference claim to the jury (Appx1208) and resolved Iconic's unfair competition claim post-trial under Rule 52 (Appx5–7).

Respectfully submitted, this 25th day of September, 2026.


s/ *Kathleen R. Geyer*

Kathleen R. Geyer
Dario A. Machleidt
KILPATRICK TOWNSEND & STOCKTON LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600
dmachleidt@ktslaw.com
kgeyer@ktslaw.com

Kristin M. Adams
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, N.E.
Suite 2800
Atlanta, GA 30309
(404) 815-6138
kmadams@ktslaw.com

## CERTIFICATE OF COMPLIANCE

This brief complies with the word count limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) or Federal Circuit Rule 28.1(a), as it contains 13,544 words as determined by the word-count function of Microsoft Word, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Fed. Cir. R. 32(b)(1).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft 365 Word 14-point Century Schoolbook font.

*<u>/s/ Kathleen R. Geyer</u>*

Kristin M. Adams
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, N.E.
Suite 2800
Atlanta, GA 30309
(404) 815-6138
kmadams@ktslaw.com

Kathleen R. Geyer
Dario A. Machleidt
KILPATRICK TOWNSEND & STOCKTON LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600
dmachleidt@ktslaw.com
kgeyer@ktslaw.com