**Nos. 2025-1516**

# United States Court of Appeals for the Federal Circuit

ICONIC MARS CORPORATION,

*Plaintiff-Appellant*

STEPHEN M. LOBBIN,

*Sanctioned Party-Appellant*

*v.*

KAOTICA CORP.,

*Defendant-Appellee*

*Appeals from the United States District Court for the Southern District of California in No. 3:22-cv-00092-CAB-DEB, United States District Judge Cathy Ann Bencivengo.*

## REPLY BRIEF OF APPELLANTS

STEPHEN M. LOBBIN, ESQ.
SML AVVOCATI P.C.
888 Prospect Street, Suite 200
La Jolla, CA 92037
(949) 636-1391

*Counsel for Appellants*

OCTOBER 9, 2026

**CERTIFICATE OF INTERERST**

Pursuant to FCR 28(a)(1) and 47.4, counsel for the Appellants Iconic Mars Corporation and Stephen M. Lobbin (collectively "Iconic") certifies the following:

1. The full name of every party or amicus represented in the case by me is: Iconic Mars Corporation (including its principal Oluseyi James Olaleye), and Stephen M. Lobbin.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest): N/A

3. Iconic Mars Corporation states that there is no parent corporation or publicly held corporation that owns 10% or more of its stock.

4. The names of all law firms, partners and associates appearing in the lower tribunal or are expected to appear for Iconic in this court, are as follows:

Stephen M. Lobbin
SML Avvocati P.C.
888 Prospect Street, Suite 200
La Jolla, CA 92037

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal: *Kaotica IP Corp. v. Iconic Mars Corporation et al.*, Docket No. 2025-1883.

Dated: October 9, 2026

/s/ Stephen M. Lobbin
*Counsel for Appellants*

## TABLE OF CONTENTS


| | *Page* |
|---|---|
| CERTIFICATE OF INTEREST | 2 |
| TABLE OF AUTHORITIES | 4 |
| REPLY ARGUMENT | 5 |
| CONCLUSION | 19 |
| PROOF OF SERVICE | 20 |
| CERTIFICATE OF COMPLIANCE | 20 |

# TABLE OF AUTHORITIES


| ***Cases*** | ***Page(s)*** |
|---|---|
| *Bodum USA, Inc. v. A Top New Casting Inc.*<br>927 F.3d 486 (7th Cir. 2019) | 11 |
| *Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co.*<br>156 F.4th 1259 (Fed. Cir. 2025) | 8 |
| *Goodyear Tire & Rubber Co. v. Haeger*<br>581 U.S. 101, 137 S. Ct. 1178, 197 L. Ed. 2d 585 (2017) | 14 |
| *L.A. Gear, Inc. v. Thom McAn Shoe Co.*<br>988 F.2d 1117 (Fed. Cir. 1993) | 13 |
| *MarcTec, LLC v. Johnson & Johnson*<br>664 F.3d 907 (Fed. Cir. 2012) | 7 |
| *Sidibe v. Sutter Health*<br>103 F.4th 675 (9th Cir. 2024) | 9 |
| *Tangle, Inc. v. Aritzia, Inc.*<br>125 F.4th 991 (9th Cir. 2025) | 6 |
| *Target Corp. v. United States*<br>134 F.4th 1307 (Fed. Cir. 2025) | 14 |
| *TrafFix Devices, Inc. v. Marketing Displays, Inc.*<br>532 U.S. 23, 121 S. Ct. 1255, 149 L.Ed.2d 164 (2001) | 7-8 |
| *In re Valve Antitrust Litig.*<br>No. 21-563, 2026 WL 2453497 (W.D. Wash. Aug. 21, 2026) | 14 |
| *Wonderland Switzerland AG v. Evenflo Co., Inc.*<br>162 F.4th 1346 (Fed. Cir. 2025) | 9-12 |

## REPLY ARGUMENT

Before addressing Kaotica's responses to the seven demonstrated, material errors below, Kaotica's many mischaracterizations of the record deserve attention.

Kaotica asserts a fiction of some kind of "illumination" to "baselessness" that occurred "[t]hroughout this lawsuit." But as Judge Bencivengo's actual comments and rulings for two years before trial make clear (*i.e.*, the words in the record), her view was that this dispute was fair and "interesting" on the merits, requiring a jury to resolve genuine issues of material fact. Kaotica asserts an quixotic inference about Iconic's recusal motion coming "a year after trial and, conveniently, only four days after Judge Bencivengo added Olaleye to the judgment." But Iconic filed the motion as soon as possible after the district court's post-judgment, unfair, extrajudicial bias become completely obvious enough for recusal to be necessary.

Kaotica asserts that Iconic's Version 2 redesigned product was an "externally indistinguishable" redesign, which obviously is a misrepresentation shown by a simple comparison of the shapes of the Version 1 accused product (in the ECF-file-stamped record of the first action) with the mistaken "Exhibit 2" Kaotica's counsel filed unilaterally with the settlement of the first action. Iconic's redesigned product allowed it to demonstrate in the second action the invalidity of Kaotica's asserted unregistered "trade dress," which its counsel continued to assert

even in view of Kaotica's own patents including admissions confirming the functionality of each aspect of its already weak "trade dress" contention, which was never defined in any words (as is legally required) in the prior settlement. *See Tangle, Inc. v. Aritzia, Inc.*, 125 F.4th 991, 999 (9th Cir. 2025) ("images and descriptions" of a product insufficient to identify asserted trade dress, but "a complete recitation of the concrete elements of the trade dress is required") (internal citations omitted).

Kaotica asserts that Mr. Olaleye was "confused" at trial, but such an assertion is preposterous about the very person who created and designed each new version of Iconic's products. Kaotica asserts that Attorney Lobbin "admit[ed] he failed to read the entirety of the sixteen-page Stipulated Judgment," but how does one "read" a product image? Attorney Lobbin read the terms of the agreement, not Kaotica's Exhibit 2. Why not? Because Kaotica's counsel never provided Exhibit 2 before filing it unilaterally, and never to this day has Kaotica identified who obtained that image, or where, or when, or why a file-stamped image from the record was not used.

Kaotica asserts "blame-shifting," which obviously Kaotica knows well after its inexplicable, unilateral filing of the wrong Exhibit 2, followed by asserting an admittedly-invalid trade dress throughout this entire case. Kaotica asserts that it is somehow "revisionist history" that Iconic's Version 2 redesign "is more oblong

and angular at the base, includes internal ridges . . . and has a pop filter with a white instead of grey logo/lettering." This does not even require argument to demonstrate Kaotica's misdirection; instead, anyone can simply compare the Version 1 images Kaotica filed in the first action, with the Exhibit 2 to the Stipulated Judgment Kaotica filed. Obviously, the redesigned products have noticeably different visual features and looks, in many obvious respects. As a redesign, this makes perfect sense. Finally, Kaotica makes "hay" about the parties' settlement discussions, but those discussions should be ignored as privileged, and did not involve Attorney Lobbin.

## I. Whether De Novo Or Abuse Of Discretion, The District Court Erred By Both Misunderstanding And Mis-Applying Black-Letter Law

Kaotica asserts that the district court's inaccurate legal standard—including exclusion of highly-relevant evidence of Kaotica's own statements of functionality in patents and elsewhere—was not an error of law reviewed de novo, but an evidentiary ruling under Rule 403 reviewed for an abuse of discretion. But in refusing to follow black-letter law (including *TrafFix*) requiring consideration of patents and other admissions to "rebut[] non-functionality" concerning whether Kaotica met its own affirmative "burden of showing that its unregistered trade dress is not functional," the district court failed to ensure that the correct legal test was followed. This is an error of law this court corrects on de novo review. *See MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 915-16 (Fed. Cir. 2012)

("Whether the district court applied the correct legal standard . . . is a question this court reviews de novo . . . .").

The district court did not have discretion, even under Rule 403, to exclude evidence of trade dress functionality in patents or other admissions, because doing so mis-applies this court's black-letter law including that (a) the statements of functionality including from Kaotica's patents "is strong evidence" that the asserted trade dress is functional (*see Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co.*, 156 F.4th 1259, 1284 (Fed. Cir. 2025) (quoting *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29, 121 S. Ct. 1255, 149 L.Ed.2d 164 (2001))), and (b) in view of the excluded evidence of functionality, Kaotica had an especially "***heavy burden*** of showing that the feature is not functional, for instance by showing that it is merely an ornamental, incidental, or arbitrary aspect of the device." *Id.* at 1285 (emphasis added). Because of the district court's error in failing to apply faithfully the correct legal standard for functionality evidence that is highly relevant to rebutting asserted non-functionality of a claimed unregistered trade dress, this court should reverse and remand on de novo review.

It is notable that the district court's ruling never cited Rule 403 specifically, which alone should negate Kaotica's opposition to the warranted reversal and remand. But even if this court reviews the ruling as one under Rule 403 and applies an abuse of discretion standard, the ruling remains indefensible because of

the basic importance of Kaotica's admissions of functionality in its patents and otherwise. Rule 403 "sets a high bar for exclusion: a court may exclude relevant evidence only if its probative value is *substantially* outweighed by one or more of the articulated dangers or considerations . . . the application of Rule 403 must be cautious and sparing[.]" *Sidibe v. Sutter Health*, 103 F.4th 675, 691 (9th Cir. 2024) (emphasis in original). For "highly relevant" evidence such as functionality admissions vis-à-vis asserted but unregistered trade dress (as this court has confirmed), the correct analysis should mirror the court's recent decision in *Wonderland Switzerland AG v. Evenflo Co., Inc.*, 162 F.4th 1346 (Fed. Cir. 2025).

In *Wonderland*, this court strongly rebuked the district court for excluding an "email chain" that the court determined was "highly probative" of willful patent infringement, ruling the district court's exclusion of the evidence under Rule 403 "was ***an abuse of discretion*** because the email chain included portions with ***high probative value for the issue of willfulness that far outweighs*** the limited concerns identified by the district court." *Id.* at 1360 (emphasis added). As the court reasoned, in relevant part:

> It is [] ***highly relevant*** whether an infringer acted "despite a risk of infringement that was 'either known or so obvious that it should have been known to the accused infringer.'" *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017) (quoting *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 97, 136 S. Ct. 1923, 195 L.Ed.2d 278 (2016)).
>
> . . .

Here, the messages go beyond knowledge by demonstrating Evenflo was aware one of its accused 3-in-1 seats—the Evenflo Evolve—was at risk of infringement and that its affiliate sought advice from Evenflo on how to "ingeniously" avoid the claims of the '043 patent. J.A. 3785-86. Moreover, to the extent the district court excluded the email chain because it is "unclear exactly which portion" of the product might infringe, J.A. 4008, this was clear error. The email chain, on its face, plainly makes Evenflo aware that its affiliate, Goodbaby, had concerns about the Evenflo Evolve's "[l]ocking of [the] booster seat lower section to tubes." J.A. 3786.

As for the danger of unfair prejudice and confusion, we conclude the district court abused its discretion by excluding the email chain rather than managing any existing risk through ***limiting instructions*** or redaction. *See* 2 Weinstein's Federal Evidence § 403.02 (2025) ("If there is doubt about the existence of unfair prejudice, confusion of issues, [etc.] . . . it is generally better practice to admit the evidence, taking necessary precautions by way of contemporaneous instructions to the jury followed by additional admonitions in the charge[.]"); *id.* ("The court has the power to admit part of a line of proof while excluding the more prejudicial details."). . . .

. . .

Accordingly, we conclude the district court abused its discretion by excluding highly probative willfulness evidence in the email chain based solely on nonexistent or otherwise manageable concerns.

Finally, excluding these portions of the email chain was not harmless, as ***it impaired Wonderland's substantial rights to effectively prove its case of willfulness***. Because we cannot say it is highly probable that this exclusion did not affect the case's outcome, ***we reverse the district court's denial of a new trial and remand for a new trial on willful infringement*** of the '043 patent relating to the 3-in-1 seats only (excluding the 4-in-1 seats that no reasonable jury could find infringe, *see* § I.A, *supra*). On remand, the district court should admit the most probative portions of the email chain that (1) suggest the Evolve 3-in-1 seat might fall within the scope of claim 1 of the '043 patent and (2) ask how to "avoid the claims of the patent."

> J.A. 3785-86. We otherwise leave it to the district court's discretion to determine how to minimize the risk of unfair prejudice and confusion through redaction of the remainder of the email chain, limiting instructions, or both.

*Wonderland*, 162 F.4th at 1360-62 (emphasis added).

Kaotica ignores *Wonderland*. Instead, Kaotica misdirects this court to the *Bodum* case from the Seventh Circuit, which is not controlling law and moreover is inapposite for many reasons including that in *Bodum*, unlike here, "The patents A Top sought to introduce do not claim any of the features that comprise the claimed Chambord trade dress." *Bodum USA, Inc. v. A Top New Casting Inc.*, 927 F.3d 486, 497 (7th Cir. 2019). Just like in *Wonderland*, here the evidence of the functionality of Kaotica's asserted unregistered trade dress should never have been excluded because it was "highly relevant" and admitted to the functionality of the same features asserted as trade dress. And just like in *Wonderland*, the district court's error requires reversal and remand for a correct application of the law, and a correct consideration of all ***highly relevant*** evidence.

In its argument, Kaotica first mischaracterizes the district court's ruling because not only did the district court exclude Kaotica's utility patent itself as documentary evidence at trial, but the district court also excluded any "discussions about the patent," which included sustaining objections to questions at trial posed to Kaotica's principal witness on the subject of his admissions of the functionality of the key features of Kaotica's asserted unregistered trade dress.

Kaotica argues (without quotation from the record) that the district court's real motive was to prevent an attempt to "redefine and expand the scope" of the asserted unregistered trade dress rights. More unjustified, attempted "blame shifting" to Iconic and its counsel, and the record does not support it. Iconic presented the same evidence for the same purpose on summary judgment, without critique as improper or exclusion by the district court. As Iconic explained to the district court, Kaotica "can define their asserted trade dress however they want [b]ut if it's too broad, we can invalidate it, showing they haven't met the nonfunctional requirement." *See* Opening Brief at 22.[1] Moreover, as in *Wonderland*, the district court "abused its discretion by excluding the [evidence] rather than managing any existing risk through limiting instructions." *See supra*.

Kaotica argues the district court's error was harmless, but again as in *Wonderland*, the penalty of exclusion of highly relevant evidence of functionality "was not harmless, as it impaired [Iconic's] substantial rights to effectively prove its case." *See supra*. The abuse of discretion here was even more harmful than in *Wonderland*, because the district court's error lightened Kaotica's burden to prove non-functionality to the weight of a feather, as opposed to having to confront its

[1] Kaotica argues it "consistently defined its claimed trade dress," but no such definition was included in the Stipulated Judgment, and the district court reminded the parties that the scope of the asserted trade dress was an issue for trial. *See* Opening Brief at 23 ("They are going to put on their evidence that this is their trade dress.").

own admissions of functionality in its own patents, which is what this court confirmed again in *Focus Products* is "strong evidence" that the asserted trade dress is functional. *See supra*.

Kaotica faults Iconic for advocating invalidity and non-infringement including that "the parties' trade dresses are more dissimilar than they were," but blaming Iconic's advocacy does not excuse the district court's wholesale refusal to allow the jury to consider highly relevant evidence. The fact is, trade dress jurisprudence requires consideration of how a product appears to a consumer in all aspects, not just those claimed by Kaotica to be non-functional and source-identifying. *See L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1129 (Fed. Cir. 1993) ("Trade dress is thus viewed as the overall combination and arrangement of design elements into the total image ***by which the product is perceived by the consuming public***."). Here, it is undisputed that consumers making purchases view the inside and outside and all angles of the parties' competitive products, not just Kaotica's limited depiction.

Kaotica attempts to side-step the district court's consideration of—and Kaotica's own failure to object to—***the same excluded evidence at the summary judgment stage***. No amount of contorting removes the import of this case history in informing again why the district court's abuse of discretion was so apparent, even under a Rule 403 analysis rather than de novo.

Kaotica's counsel must come to grips with its own repeated mistakes of sitting idly by while the district court ran itself aground via this erroneous appreciation of black-letter law, and abusing its discretion, even if that standard is reached. This error must be reversed, and this case must be remanded for a correct application and evaluation of the invalidity of Kaotica's asserted weak, unregistered "trade dress" rights, if any.

## II. The District Court Wildly Abused Its "Inherent Power" And The Lives Of The Human Beings Before It

Try as it might, Kaotica cannot defend with any integrity the district court's spiteful abuse of Iconic, its principal, its counsel, and their loved ones, all the while ignoring the strict limitations of any district court's "inherent power" including proximate causation. *See* Opening Brief at 44 (noting the strict requirements of "subjective bad faith" and "restraint"); *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 109, 137 S. Ct. 1178, 1187, 197 L. Ed. 2d 585 (2017) (requiring strict causal nexus between specific misconduct and specific harm); *see also In re Valve Antitrust Litig.*, No. 21-563, 2026 WL 2453497, at *4 (W.D. Wash. Aug. 21, 2026) ("The multi-million-dollar sanction Lally asks for is not one the Court can impose . . . [and it] far beyond righting any wrongs that Lally has suffered due to Valve's actions."); *Target Corp. v. United States*, 134 F.4th 1307, 1314-15 (Fed. Cir. 2025) (noting duty to exercise inherent powers "with great caution"). How

could it be "great caution" to force an individual attorney working for a client *pro bono* into bankruptcy?

Kaotica argues that the district court's sanctions award was "restrained," which is laughable if not so harsh beyond belief. The inherent power, like the discretion under 28 U.S.C. § 1927, is limited to specific misconduct, and the specific harm proximately caused by the specific misconduct. This action involved Iconic's Complaint aimed at damages for Kaotica "taking down" Iconic's business online, which was quickly followed by Kaotica's six counterclaims. Even if all of the district court's *ad hominem* was actually true (none of which is), how would Kaotica's counterclaims have gotten resolved but for Iconic and its *pro bono* counsel defending those claims on the merits? Iconic had no resources available for a settlement, and Kaotica had destroyed its ability to sell its redesigned products (or its other products) online.

Kaotica argues that Iconic is "distorting" the record, but the argument is laid bare by just comparing briefs. Iconic presents the district court's own words and other quotations from the record, while Kaotica's counsel provides this court only with its own "spin" with more *ad hominem* and clever turns of phrase. This court should follow the record, not counsel's arguments about what happened and who said what, and when, and in what context.

Therefore, this court should reverse the sanctions award against counsel, in its entirety. At a minimum, this court should remand for a new determination of a sanctions amount that complies with the causal nexus requirement.[2]

## III. Iconic's Principal Should Be Off The Final Judgment

As Iconic substantiated, adding Mr. Olaleye as a judgment-debtor post-trial (a) violated his right to a jury trial, and (b) ignored the "heavy burden of proof" to overcome "the presumption of corporate separateness." Kaotica argues that there was no error because "Olaleye controlled Iconic as its sole owner and decisionmaker, was solely responsible for designing and selling the [accused products], directed the underlying litigation, and shared unity of interest with Iconic." But this is true of every one-person corporation. It does not justify the district court's summarily adding Mr. Olaleye personally to the final judgment by ignoring that he was never sued personally, for years he was never added personally to the action via amended pleading, and he was never allowed his right to have a jury assess his personal liability, if any. Included in his right to require the district court to follow the law was to have the district court faithfully apply the presumption of corporate separateness to his actions underlying the case, not his actions post-judgment.

---

[2] Kaotica argues about Mr. Olaleye's settlement letter, which is privileged under FRE 408, and moreover it is Mr. Olaleye's letter. Attorney Lobbin did not "direct" it or control Mr. Olaleye, and more than any attorney has no real control over his client.

## IV. Only The District Court's Hubris Prevented Justified Recusal

As noted in the Opening Brief, denying recusal was erroneous for several reasons, both procedural and substantive.

Kaotica fails to acknowledge that, just like Iconic, Kaotica recognized (only years later at trial) that Exhibit 1 to the 2021 Stipulated Judgment needed correction, just like Exhibit 2. This fact alone makes Kaotica's argument exceedingly frivolous that it was important no one "ever realized the Stipulated Judgment included the [] wrong product image as a crucial exhibit." Kaotica apparently went on with life also, for the same period of time, without realizing that its own Exhibit 1 was a corrupted image of its own product, which supposedly showed (only in image form, not words) a defined "trade dress." Moreover, that the mistake in need of correction was caused by Kaotica's counsel's "shenanigans" was supported and corroborated by evidence from the only percipient witnesses to it—Iconic's principal and counsel. Kaotica never bothered to seek percipient evidence from its own counsel (because there is no defensible explanation); instead, Kaotica's new counsel formulated an obviously false defense of the wrong Exhibit 2, which obviously did not come from the only place it could have, *i.e.*, the filings in the record of the first action.

Kaotica argues that Iconic waited to file its recusal motion, which is a flawed argument because only after the district court's "malpractice" comment did

it become obvious that Judge Bencivengo was operating improperly from a position of spite and vengeance, rather than professional jurisprudence.

## V. There Was Insufficient Due Process

The misconduct of the district court during trial was "beyond the pale" of the equanimity required of a judicial officer, particularly in the presence of a jury. The misconduct ensured the jury's adverse view of Iconic and its counsel, and its adverse decisions against Iconic.

Kaotica argues that the district court's challenged statements to the jury "were consistent with representations [Iconic] made" and were not an "extremely high level of interference" creating "a pervasive climate of partiality and unfairness." Perhaps this is an example of "you wouldn't believe it unless you were there," but suffice it to say that a district court judge screaming at a litigant's principal and then screaming again at its lead counsel signals clearly to the jury who the judge thinks should win the case. The jury followed the district court's lead—"lock, stock and barrel." This behavior by the district court was beyond the "extremely high level of interference" required for a due process violation.

## VI. The "Intent" Jury Instruction Was Unfairly Biased

Kaotica fails to defend the erroneous jury instruction on the merits, because it was an erroneous statement of the law. Kaotica's only defense of the erroneous jury instruction on "intent"—which Kaotica admits included "language added to

the model instruction"—is that Iconic had prior opportunities to object, before it did object. The argument is meritless, because the fact remains that the district court should be accountable to ensure that the jury is instructed correctly on the law, not on a party's misrepresentation of the law.

### VII. Iconic's Claims For Damages Should Have Been Decided By The Jury

Kaotica asserts that the parties' Stipulated Judgment "imposed no obligation or restriction on Kaotica," but this is the question the jury should have been permitted to answer. Instead, the district court ruled (as a matter of law) what the agreement did and did not require. That ruling, of course, is reviewable de novo as a matter of contract interpretation, just as is a matter of patent claim construction. On a proper de novo review, this court should vacate the district court's ruling as matter of law, and remand.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For the foregoing reasons, Appellants respectfully request that this court should reverse and/or vacate, and remand as appropriate, each and all of the district court's challenged, erroneous rulings and determinations.

Respectfully submitted,

October 9, 2026

/s/ Stephen M. Lobbin
*Counsel for Appellants*

## **PROOF OF SERVICE**

I hereby certify that on October 9, 2026, I electronically filed the above document(s) with the Clerk of Court using CM/ECF which will send electronic notification of such filing(s) to all registered counsel.

*/s/ Stephen M. Lobbin*

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B), as the brief contains 4312 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii). Additionally, this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6), as it has been prepared in a proportionally spaced typeface using MS Word in a 14 point Times New Roman font.

*/s/ Stephen M. Lobbin*